**In re CHAUS SECURITIES LITIGATION.**

**No. 88 Civ. 8641 (SWK).**

United States District Court, S.D. New York.

Sept. 1, 1992.

Greenfield & Chimicles by Richard D. Greenfield, Mark C. Rifkin, Haverford, Pa. (Lead counsel), Kaplan & Kilsheimer by Robert N. Kaplan, Richard J. Kilsheimer, New York City (liaison counsel), Cohen, Milstein, Hausfeld & Toll by Steven J. Toll, Mark S. Willis, Washington, D.C., Gross & Metzger by Bernard M. Gross, Philadelphia, Pa., for plaintiffs.

Pryor, Cashman, Sherman & Flynn by Donald S. Zakarin, Andrew H. Bart, Anne E. Kershaw, Stuart L. Melnick, New York City, for defendants Bernard Chaus, Inc., Bernard Chaus and Josephine Chaus.

Roger & Wells by James N. Benedict, Michael F. Coyne, Gary R. Carney, Jon Heller, Nancy P. Margolis, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and Bear Stearns & Co., Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs Lisa A. Phifer, I. Bibicoff Inc. Pension Trust Fund, Gerald S. Susman and Diana Goldshlack bring this action alleging violations of §§ 11 and 12(2) of the Securities Act of 1933 (the "1933 Act"), as amended, 15 U.S.C. §§ 77k and 77$l$(2), § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act" or "1934 Act"), as amended, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, promulgated thereunder. Defendants Bernard Chaus, Inc. ("BCI"), Bernard Chaus and Josephine Chaus (collectively, the "Chaus Defendants"), move to dismiss the Consolidated and Amended Complaint (the "Amended Complaint") (1) pursuant to Rule 4(j) of the Federal Rules of Civil Procedure, for failure to serve timely process, (2) pursuant to Section 13 of the 1933 Act, 15 U.S.C. § 77m, for failure to comply with the applicable statute of limitations, (3) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted and (4) pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, for failure to plead fraud with particularity. In addition, the Chaus Defendants move for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting them summary judgment dismissing the complaint on the grounds that the applicable statutes of limitation bar plaintiffs' claims. Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and Bear Stearns & Co. Inc. (the "Lead Underwriters")[1] move to dismiss the

---

1. Plaintiffs' claims against the Lead Underwriters relate only to these defendants' activities in connection with the initial public offering (the "IPO"), namely, the Prospectus and information-

Amended Complaint (1) pursuant to § 13 of the 1933 Act and appropriate case law, for failure to comply with the applicable statute of limitations (2) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted and (3) pursuant to Rule 9(b) for failure to plead fraud with particularity.

## BACKGROUND

This action is the consolidation of four separate actions brought between December 7, 1988 and January 13, 1989. The original complaint (the "1988 Complaint") charged the Chaus Defendants and Lead Underwriters with violations of §§ 11 and 12(2) of the Securities Act of 1933 (Count I), § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder (Count II) and supplemental state law claims for negligence and negligent misrepresentation (Count III).

In this Court's prior opinion, *In re Chaus Sec. Litig.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 95,646 at 97,888, 1990 WL 188921 (S.D.N.Y. Nov. 20, 1990) ("*Chaus I*"), familiarity with which is assumed, this Court dismissed all three counts of the 1988 Complaint. Count I was dismissed without prejudice for failure to plead compliance with the statute of limitations, failure to state a claim under Rule 12(b)(6) and failure to plead fraud with particularity in accordance with Rule 9(b). Count II was dismissed without prejudice under Rules 12(b)(6) and 9(b). Count III was dismissed with prejudice.

The Amended Complaint was subsequently filed on December 18, 1990. It alleges that due to misrepresentations and omissions by the Chaus Defendants and Lead Underwriters, plaintiffs were induced to purchase stock in BCI, a corporation engaged in the design, manufacture and marketing of women's clothing. Specifically, plaintiffs claim that the Chaus Defendants and Lead Underwriters misrepresen-

ted BCI as experiencing a dramatic growth in profitability during the period immediately before the IPO by allowing its customers excessive credits for mark-down merchandise, chargebacks and sales discounts, Amended Complaint at ¶ 27, reporting accounts receivables from its customers based on "gross sale prices" without adjusting downward for advance markdown money, *id.* at ¶ 28, delaying gross sales attributable to fiscal 1985 to fiscal 1986, *id.* at ¶ 27, and allocating more advertising expense as a percentage of gross sales to fiscal 1985 than 1986. *Id.* The effect of these manipulations, according to plaintiffs, was to overstate BCI's true income and assets. *Id.* at ¶ 28.

Plaintiffs further allege that the Chaus Defendants engaged in illegal and discriminatory price rebates to BCI's customers, *id.* at ¶ 31, that BCI never built any significant management infrastructure, controls or systems, *id.* at ¶ 32, and that BCI failed to perform marketing evaluations, *id.* at ¶ 33, relying instead on the personal instinct and tastes of Bernard and Josephine Chaus. *Id.* at ¶ 41. The Prospectus allegedly failed to disclose that BCI had "recklessly" added new product lines without employing experienced personnel, and that its management did not have good insight into the market. *Id.* at ¶ 40. Plaintiffs contend that the Chaus Defendants and Lead Underwriters concealed BCI's lax and inadequate financial and accounting controls, *id.* at ¶ 43, and failed to disclose the extent to which BCI's quota problems hindered importation of their foreign manufactured goods. *Id.* at ¶ 42.

Plaintiffs also allege that the Chaus Defendants and Lead Underwriters artificially created demand for BCI stocks in order to attract investors by conducting informational meetings, where negative aspects of BCI were minimized and unjustified analogies were made with Liz Claiborne, another successful women's apparel company. *Id.* at ¶ 36. As a result, the IPO was expanded from 6.0 million to 6.9 million shares of

---

al meetings, until approximately October 1, 1986, when BCI's Form 10–K for 1986 was filed with the Securities Exchange Commission. Amended Complaint, at ¶ 12(b). Plaintiffs'

claims against the Chaus defendants, however, include various post-IPO activities in addition to those claims asserted against the Lead Underwriters.

stock. *Id.* at ¶ 64. Moreover, the Lead Underwriters' "due diligence" investigation of the Prospectus was superficial. *Id.* at ¶ 37.

Lastly, plaintiffs contend that several passages in the 1986 and 1987 Annual Reports were false and misleading when made because defendants knew or recklessly disregarded price manipulations, lack of adequate financial and accounting controls and the reduction of H.R. Macy & Company's patronage. Plaintiffs allege, however, that because of defendants' misrepresentations, they were not on notice of defendants' fraud until September 23, 1988, when BCI reported a $10.9 million loss, *id.* at ¶¶ 57–58, and October 18, 1988, when BCI issued an annual report disclosing a pre-tax loss of $21 million. *Id.* at ¶ 50.

## DISCUSSION

### I. Relation Back of the Amended Complaint

As a preliminary matter, the Court must determine whether the Amended Complaint should relate back to the date of the 1988 Complaint for statute of limitations purposes. The Chaus Defendants argue that plaintiffs' claims should not relate back for two reasons: first, since service of process of the 1988 Complaint on Bernard and Josephine Chaus was faulty, the Amended Complaint is actually plaintiffs' first complaint for statute of limitations purposes; [2] second, the Amended Complaint raises new factual allegations of fraudulent manipulation of accounts receivable that do not arise out of the same transactions or occurrences as do those pled in the 1988 Complaint.

### A. *Relation Back Under Rule 4(j)*

■ Rule 4(j) of the Federal Rules of Civil Procedure provides, in pertinent part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service

was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j). If a plaintiff cannot establish "good cause" for failure to meet the deadline, dismissal is mandatory. *Yosef v. Passamaquoddy Tribe*, 876 F.2d 283, 287 (2d Cir.1989), *cert. denied*, 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990).

The Chaus Defendants contend that plaintiffs' failure to serve either of the Chauses with the summons and complaint within the 120–day time frame contemplated by Rule 4(j) requires dismissal of the Amended Complaint on statute of limitations grounds. They argue that because the 1988 Complaint was never served, the Amended Complaint is actually the first complaint and cannot "relate back" to the filing of the 1988 Complaint. As such, according to plaintiffs, the Amended Complaint, having been served on December 18, 1990, beyond three years from the IPO, and is thus barred by the applicable statutes of limitation.

Plaintiffs contend that service of process was duly made by serving copies of the summons and complaint on the Chaus's then attorneys and, on an occasion several months hence, by leaving copies of the process with a manager at BCI's New York offices. Plaintiffs argue, however, that in the event the Court were to find service ineffective, application of Rule 4(j) is unwarranted under the circumstances since the Chauses will suffer no actual prejudice from a liberal application of the rule.

■ With respect to service of process of the 1988 Complaint on the Chauses, the record is clear that such service was patently defective, the Chauses were never served with the summons and 1988 Complaint and plaintiffs have failed to establish good cause for failing to do so. The undated certificate of service of Richard Kilsheimer, Esq. (annexed as Exhibit "K" to

---

**2.** In *Chaus I,* this Court declined to address the issue of whether process had been served in accordance with Rule 4(j) as the complaint was

dismissed on other grounds. *See Chaus I,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 95,646 at 98,005, 1990 WL 188921.

the affidavit of Richard D. Greenfield) ("Greenfield Aff."), sworn to December 8, 1989) one of plaintiffs' attorneys, indicates that on or about December 6, 1988, he served a copy of the summons and 1988 Complaint on the Chauses then attorney, Howard Wilson ("Wilson"), and his law firm, Rosenman & Colin. Richard Greenfield ("Greenfield"), a senior partner of the firm of Greenfield & Chimicles, plaintiffs' lead counsel, similarly avers that he forwarded a copy of the process to the Chaus's then counsel by courier. *See* Greenfield Aff., at ¶ 6. Greenfield also avers that Wilson and his firm held themselves out as counsel to the Chauses, had extensive negotiations with plaintiffs' counsel and displayed his name on all pleadings filed by the Chaus Defendants in this litigation. *See* Greenfield Aff., at ¶¶ 7–8. Greenfield nowhere claims, however, that Wilson, or any other member of his firm, expressly or impliedly agreed to waive the requirement of service of process with respect to the Chauses by accepting service on their behalf. While plaintiffs may have undertaken to extend the professional courtesy of forwarding to their adversaries' counsel a copy of a pleading concurrently being filed and served, the Court declines to construe acceptance of such a transmission as the equivalent of receipt of proper notice of the pendency of the suit and a knowing waiver by the Chauses of the requirement of proper service of process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). To construe the facts here as a waiver of the defendants' right to have process properly served upon them would permit the finding of a waiver in virtually every case in which plaintiff's counsel is aware of the identity of his adversary, and would effectively obliterate the requirement of proper service of process and the due process concerns that such requirement safeguards.

■ In addition, the purported affidavit of service of Peter A. Kabcenell (annexed as Exhibit "L" to the Greenfield Affidavit), stating that process was served on the Chauses "by delivering true copies thereof to Joanne Trezzam Manager of Administra-

tion, at 1410 Broadway, New York, New York," is unsigned and unsworn and therefore of no probative evidentiary value. Even had Kabcenell's affidavit been sworn, it fails to aver that copies of the process were subsequently mailed as is required under C.P.L.R. § 308 where substituted service upon a person of suitable age and discretion is attempted. Thus the affidavit, even had it been duly sworn, is facially defective as to service on the Chauses.

Finally, the Court finds that plaintiffs have failed to show good cause why service was not made within the time proscribed by rule 4(j). Significantly, plaintiffs do not seek to establish good cause for failing to properly serve the summons and 1988 Complaint in accordance with Rule 4(j), but appear to rely instead on their contention that the Chauses were properly served. As the Court finds that service was patently defective for the reasons set forth above, it declines to find that plaintiffs fail to satisfy the "good faith" requirement of Rule 4(j).

■ Having determined that the 1988 Complaint was never served on the Chauses, the Court must decide whether the Amended Complaint should relate back to the filing of the 1988 Complaint in order to fix a date upon which the Court will deem process to have been served. In a case closely analogous to the case at bar, the United States District Court for the Northern District of Illinois observed as follows:

> Finally, Fujitsu, Ltd. has also waived its objection to the sufficiency of service of process based on Rule 4(j). . . . It is true that on its own initiative the Court could have dismissed the action as to Fujitsu, Ltd. without prejudice. We did in fact dismiss the action as to Fujitsu, Ltd. on December 21, 1984, though on other grounds. The effect of that dismissal is the same as a dismissal under 4(j), without prejudice. We did grant leave for [the third-party plaintiff] to attempt to serve Fujitsu again, if not barred by the statute of limitations or other law. That is essentially the effect of a 4(j) dismissal without prejudice. *In neither case*

*would the date of service relate back to the original date the ... complaint was filed, rather it would run from the date the process was actually served, after the dismissal.*

*Zisman v. Seiger,* 106 F.R.D. 194, 198 (N.D.Ill.1985); *see also Gleason v. McBride,* 869 F.2d 688 (2d Cir.1989) (citing *Application of the Royal Bank of Canada,* 33 F.R.D. 296, 299–303 (S.D.N.Y.1963) (where plaintiff had failed to serve process on defendant, in effect, no action had been commenced)); *Sweeny v. Greenwood Index–Journal Co.,* 37 F.Supp. 484, 485 (W.D.S.C.1941) (where summons is fatally defective, process is void *ab initio* and broad and liberal powers of the court as to amendments under the Federal Rules cannot properly be exercised to confer jurisdiction).

The Court finds that under the reasoning of *Zisman,* the Amended Complaint should not relate back to the filing of the 1988 Complaint and should be deemed filed on December 18, 1990. Since the claims against the Chauses do not relate back, they are time-barred under the applicable statutes of limitations. Plaintiffs' §§ 11 and 12 claims are time-barred by operation of the one-year/three-year limitation period of Section 13 of the 1933 Act since the Amended Complaint was neither filed nor served until December of 1990, undisputedly more than four years after the IPO and more than two years after plaintiffs, by their own admission, discovered the alleged fraud set forth in the Amended Complaint. *See* Amended Complaint at ¶ 55. Similarly, since the Amended Complaint as against the Chauses was first filed after the Second Circuit's decision in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990), there is no issue as to the retroactive application of *Ceres* one-year/three-year limitations period and plaintiff's § 10(b) and Rule 10b–5 claims against the Chauses are time-barred for similar reasons. (*See infra,* at 1268–70.) Accordingly, Counts I and II of the Amended Complaint are dismissed with prejudice as to the Chauses as these claims are barred by the applicable one-year/three-year statutes of limitations.

### B. *Relation Back Under Rule 15(c)* [3]

The Chauses also argue that, even assuming that the 1988 Complaint was properly served, the Amended Complaint should not relate back for purposes of Rule 15(c). *See generally* 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1497 (when complaint is dismissed without prejudice, amended pleading which amplifies factual allegations of new pleading or asserts new claims based on earlier factual allegations generally relates back to original pleading). They contend that in this case, because the Amended Complaint, *inter alia,* involves new allegations of accounts receivable fraud requiring different proof covering different time periods, the Amended Complaint may not relate back and are barred by the applicable statutes of limitations. Specifically, the Chauses contend that

> plaintiffs have alleged an entirely different case centering upon defendants' putative "accounting manipulations" in connection with BCI's accounts receivable and the supposed illegal and covert agreement to issue customers credits, allowances and markdowns, thereby rendering the accounts receivable, and hence the assets and income, of BCI overstated. (*See* Amended Complaint at ¶¶ 27–31.) None of the new allegations are related to or arise out of the original fraudulent conduct alleged.

Memorandum of Law of Defendants Bernard Chaus, Inc., Bernard Chaus and Josephine Chaus in Support of Motions to Dismiss Complaint and for Summary Judgment, at 48.

 Rule 15 of the Federal Rules of Civil Procedure provides that:

---

**3.** Although the preceding analysis under Rule 4(j) is dispositive of plaintiffs' claims against the Chauses, the Court reaches the Chaus's Rule 15(c) argument both because it is relevant to an analysis of the claims against the Lead Underwriters and because the Court holds alternatively with respect to the Chaus' argument that plaintiffs fail to plead compliance with Section 13 of the 1933 Act. *See infra,* at 1264–67.

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Fed.R.Civ.P. 15(c). The standard for determining whether a claim should relate back under Rule 15(c) is well established. The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party "by the general fact situation alleged in the original pleading." *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 255 (S.D.N.Y.), *aff'd*, 842 F.2d 612 (2d Cir.), *cert. denied sub. nom.*, *O'Reilly v. New York Times Co.*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988) (citation omitted); *see also Tri–Ex Enterprises v. Morgan Guar. Trust*, 586 F.Supp. 930 (S.D.N.Y.1984). While allegations pronouncing new claims in an amended pleading will not relate back when based upon new facts and different transactions, *see Hooper v. Sachs*, 618 F.Supp. 963, 977 (D.Md.1985), *aff'd*, 823 F.2d 547 (4th Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987), allegations which simply "amplify the facts alleged in the original pleading or set forth those facts with greater specificity" will relate back. *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 12 (S.D.N.Y.1985); *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. at 255–56. As stated by Judge Friendly, the relation-back doctrine is properly applied only where the claims asserted "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). The rationale underlying the relation-back doctrine is that one who has been given adequate notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitations are designed to afford. *Tri–Ex Enterprises*, 586 F.Supp. at 932 (citing 3 J. Moore, *Moore's Federal Practice*, ¶ 15.13[3] at 15–194).

Application of these principles to this case indicates that the Amended Complaint should relate back to the original pleading pursuant to Rule 15(c). The 1988 Complaint, while not specifically mentioning "accounts receivable," nevertheless provided the Chauses with sufficient notice of alleged financial and accounting manipulations such that the accounts receivable scheme alleged in the Amended Complaint is a "natural offshoot" of the "basic scheme" to defraud investors by misrepresenting the company's earnings and profitability. *Oliner*, 106 F.R.D. at 13. For example, the 1988 Complaint alleges that the Prospectus reported vastly improved pro forma net income by including inventories which may not have been reflected in the pre-IPO financial statements and by reporting selling, general and administrative expenses at artificially low levels. 1988 Complaint, at ¶ 26. It also alleged that the Prospectus failed to disclose that Macy's was sharply cutting back its purchases from BCI, BCI lacked adequate cost controls in manufacturing and shipping, BCI's financial reporting was questionable, and that these factors led to delayed and unusable deliveries of merchandise. 1988 Complaint, at ¶¶ 32–36. Significantly, by alleging that BCI failed to disclose that booked and confirmed sales represented unusable deliveries of merchandise, plaintiffs plainly seek to claim that invoices which were carried as valid receivables on BCI's books would be subject to rejection by BCI customers, resulting in overstated sales and thus accounts receivable. Thus, the Court finds that the accounts receivable allegations constitute neither a new transaction or occurrence nor a new claim, and that, under Rule 15(c), the Amended Complaint relates back to the 1988 Complaint for statute of limitations purposes.

## II. Statute of Limitations

### A. §§ 11 and 12(2) Claims

Section 13 of the 1933 Act provides as follows:

No action shall be maintained to enforce any liability created under section

11 [15 U.S.C. § 77k] or section 12(2) [15 U.S.C. § 771(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1) [15 U.S.C. § 771(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 [15 U.S.C. § 77k] or section 12(1) [15 U.S.C. § 771(1)] more than three years after the security was bona fide offered to the public, or under section 12(2) [15 U.S.C. § 771(2)] more than three years after the sale.

15 U.S.C. § 77m. The one-year/three-year limitation periods of Section 13 are not alternative—that is, plaintiffs must plead and prove facts demonstrating compliance with both limitations periods. *Osborne v. Mallory*, 86 F.Supp. 869, 873–74 (S.D.N.Y. 1949). Compliance with this limitations period is an essential, substantive element of a claim under Sections 11 and 12(2). *Zola v. Gordon*, 685 F.Supp. 354, 359–60 (S.D.N.Y.1988); *Bresson v. Thomson McKinnon Sec.*, 641 F.Supp. 338, 343 (S.D.N.Y.1986); *Leone v. Advest, Inc.*, 624 F.Supp. 297, 303 (S.D.N.Y.1985). As the Court indicated in *Chaus I*, in order to satisfy Section 13, the complaint must set forth:

> (1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts which plaintiff undertook in making or seeking such discovery.

*Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 662 (S.D.N.Y.1987) (quoting *Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910, 914 (S.D.N.Y.1986)).[4] Failure to plead compliance with the statute of limitations requires dismissal without prejudice to replead. *Ingenito v. Ber-*

*mec Corp.*, 441 F.Supp. 525, 552 (S.D.N.Y. 1977).

In *Chaus I*, this Court dismissed plaintiffs' Sections 11 and 12(2) claims without prejudice because of failure to plead compliance with the first *Quantum* requirement, holding that, "[w]ithout alleging the 'time and circumstances' of her discovery, the plaintiff has failed to plead compliance with the statute of limitations." [Current] Fed.Sec.L.Rep. (CCH) ¶ 95,646 at 98,000, 1990 WL 188921. With this direction from the Court, plaintiffs were required to amend their complaint to "show with specificity the circumstances of the alleged fraudulent concealment and its discovery." *Saylor v. Lindsley*, 302 F.Supp. 1174, 1187 (S.D.N.Y.1969). According to the Second Circuit, a plaintiff must make

> distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been made before.

*Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983) (quoting *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961)). Review of the Amended Complaint, however, indicates that while plaintiffs have added allegations to elaborate to the circumstances leading to discovery of the alleged fraud, such allegations fail to satisfy the first and third elements of the *Quantum* test.

### 1. First *Quantum* Element: Time and Circumstances

 With respect to the first prong, the time and circumstances of the discovery of the fraud, the complaint alleges:

> In reliance upon all of the information available to the investing public, plaintiffs undertook no particular efforts in making or seeking to make the discovery of the fraudulent nature of defendants' statements, nor should they reasonably

---

**4.** While the complaint in *Quantum* was dismissed with prejudice, that dismissal rested on the running of the limitations period, not upon failure to meet the pleading requirements. *See* 663 F.Supp. at 664.

have undertaken any such efforts, until September 23, 1988, when BCI reported its $10.9 million loss.

Plaintiffs were prevented from discovering the false and misleading nature of defendants' conduct, until September 23, 1988, by defendants' own reassurances, concealment and coverup in publicly filed documents and statements issued and disseminated to the investing public. After September 23, 1988, plaintiffs consulted with their counsel, who conducted a diligent investigation of the information then available to them, and commenced suit immediately thereafter.

Amended Complaint, at ¶¶ 57–58. Although the Amended Complaint alleges that plaintiffs were prevented from discovering the fraud until September 23, 1988, it does not state whether it was discovered on that date or by whom. Nor does the Amended Complaint allege even in conclusory terms the circumstances surrounding plaintiffs discovery of the alleged fraud. Although alleging that "BCI reported its $10.9 million loss" on September 23, 1988, the Amended Complaint does not state the significance of this "report," why it triggered plaintiffs' "investigation," or how, why or when plaintiffs came to "discover" the asserted fraud. Rather, it merely alleges that on some undetermined date, plaintiffs consulted with counsel who conducted an "investigation." Amended Complaint, at ¶¶ 57–58.

In addition, there is no allegation describing precisely what information was made available to plaintiffs on September 23, 1988, which led them to conclude that a fraud had been perpetrated. According to the Amended Complaint, the revealing report could not have been BCI's 1988 Annual Report, since plaintiffs expressly allege that the Report was made available only "on or about October 18, 1988." Amended Complaint, at ¶ 50. Plaintiffs also allege that when the Report was published "it became apparent *for the first time* that the Company's sales would decline to $272 million ... and it would report a pre-tax loss of almost $21 million.... (emphasis added)" Amended Complaint, at ¶ 50. This allegation is inconsistent with that con-

tained in Paragraph 58 (i.e., "discovery" of a reported $10.9 million loss on September 23, 1988), and further clouds the circumstances surrounding plaintiffs' discovery of the fraud. Accordingly, the Court finds that these allegations do not satisfy the requirements of Section 13 as they do not indicate the time and circumstances surrounding the discovery of the alleged fraud. *See Hill v. Der*, 521 F.Supp. 1370 (D.Del.1981) (allegation that the fraud "could not have been [discovered] prior to April 5, 1979," did not satisfy statutory requirement).

### 2. Third Quantum Element: Reasonable Diligence

The reasonable diligence standard requires a plaintiff to file suit when the possibility of fraud should have been apparent, *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 554 (S.D.N.Y.1977), and commencement of the statutory time period cannot await the plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). Moreover, "the exercise of reasonable diligence requires an investor to be reasonably cognizant of financial developments relating to his investment, and mandates that early steps be taken to appraise those facts which come to the investor's attention." *Hill v. Der*, 521 F.Supp. at 1388 (quoting *Cook v. Avien*, 573 F.2d 685, 698 (1st Cir.1978)).

Plaintiffs allege in the Amended Complaint that they "took no particular efforts in making or seeking to make discovery" of the alleged fraud, Amended Complaint, at ¶ 57, and thus concede their abject failure to have engaged in any diligent effort to discover the alleged fraud. Such a concession is fatal to plaintiffs' attempt to plead compliance with the statute of limitations. *See Cohen v. Prudential–Bache Sec., Inc.*, 713 F.Supp. 653, 663 (S.D.N.Y.1989) (plaintiff bears the burden of establishing reasonable diligence); *Intre Sport Ltd. v. Kidder, Peabody & Co., Inc.*, 625 F.Supp. 1303 (S.D.N.Y.1985), *aff'd without op.*, 795 F.2d 1004 (2d Cir.1986) (dismissal appropriate where allegations of

amended complaint establish that statute of limitations bars claim under Section 12(2) of 1933 Act). It is simply insufficient—especially in light of the Amended Complaint's allegation that negative information about BCI was disclosed as early as late 1987 and early 1988—for plaintiffs to allege that they were absolved of their duty of diligent investigation on account of defendants' alleged fraudulent concealment; in order to properly plead due diligence under the circumstances of this case, plaintiffs, at a minimum, would be required to plead their diligent efforts in keeping apprised of significant financial developments regarding BCI, and why, with the particularity required by Rule 9(b), *see Armstrong v. McAlpin*, 699 F.2d at 89; *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d at 88, defendants fraudulent concealment rendered those efforts ineffective in uncovering the alleged fraud. This is particularly so in view of plaintiffs' own discussion of the nature of the public information disclosed in a BCI press release dated September 17, 1987:

> Indeed, although some purchasers of BCI shares might initially have been alerted to possible violations of law as a result of BCI's press release dated September 17, 1987, in which references were made to BCI's adverse financial results caused, in part by "provisions for inventory mark-downs and off-price sales," such press release also stated that "Earnings were also negatively impacted by increased costs related to the start-up of two new divisions, the addition of new warehouses, more showrooms and foreign facilities, as well as increases in production, selling, shipping and administrative personnel."

1988 Complaint, at ¶ 45. In view of plaintiffs' own concession that "some purchasers of BCI shares might initially have been alerted to possible violations of law as a result of BCI's press release dated September 17, 1987," there is little point in arguing either that plaintiffs here may not reasonably be deemed similarly alerted or that plaintiffs should be absolved from the duty of inquiry which assuredly arose in connection with the September 17 press release.

Accordingly, as plaintiff's fail to plead facts sufficient to satisfy Section 13 of the 1933 Act, 15 U.S.C. § 77m, the Lead Underwriters' and Chaus Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint is granted. Such dismissal shall be with prejudice as plaintiffs are unable to plead facts sufficient to satisfy the reasonable diligence requirement applicable to claims subject to Section ·13's limitation period.

### B. Section 10(b) and Rule 10b–5 Claims

 The Chaus Defendants and Lead Underwriters argue that plaintiffs' Section 10(b) claims are also barred by the applicable statute of limitations. In 1991, the Supreme Court determined that the limitations period applicable to implied private claims under Section 10(b) and Rule 10b–5 is the one-year/three-year structure applicable to most express causes of action under the 1934 Act. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), *reh'g denied*, — U.S. —, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). In *Lampf*, the Court held that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.*, — U.S. at —, 111 S.Ct. at 2782. Significantly, the Court applied its holding in *Lampf* retroactively, thereby making the plaintiff's lawsuit untimely. *Id.*

In *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided the same day as *Lampf*, the Supreme Court addressed the issue of retroactivity with respect to newly announced rules of law, declaring that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so and that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *Id.*, — U.S. at —–—, 111

S.Ct. at 2447–2448. In light of *Beam,* the Second Circuit held that *Lampf* will be applied retroactively in this Circuit. *See Welch v. Cadre Capital,* 946 F.2d 185, 186–89 (2d Cir.1991).

On December 19, 1991, however, Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991, eliminating the retroactive effect of *Lampf.* Pub.L. No. 102–242, § 476, 105 Stat. 2236 (1991) (to be codified as § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1). That legislation provides in pertinent part that the "limitation period for any civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991 [the day before the *Lampf* decision], shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." *Id.*

Plaintiffs commenced this action on December 7, 1988. On June 19, 1991, the Second Circuit's decision in *Ceres Partners v. Gel Assoc.,* 918 F.2d 349 (2d Cir.1990), provided the limitations period applicable to § 10(b) claims. Like *Lampf, Ceres* held that § 10(b) and Rule 10b–5 claims must be brought within one year after the discovery of the facts constituting the violation and in no event later than three years after such violation. *Id.* at 364. Although, in *Ceres,* the Second Circuit set aside its longstanding practice of borrowing the most closely analogous state statute of limitations by borrowing instead from Section 9(e) of the Exchange Act, it expressly left open whether its newly announced rule should apply retroactively. *Id.*

In *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991) ("*Welch I*"), the Second Circuit determined that *Ceres* should not apply retroactively under the facts of that case. *Accord Levine v. NL. Indus.,* 926 F.2d 199 (2d Cir.1991); *Block v. First Blood Assoc.,* 763 F.Supp. 746, 751 (S.D.N.Y.1991). In reaching that determination, the court applied the three-part test for retroactivity set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under *Chevron,* for a rule to qualify for prospective-only application, a court must determine (1) whether the new rule "establish[es] a new principle of law either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed," *id.* at 106, 92 S.Ct. at 355; (2) that, considering the prior history, purpose and effect of the rule, whether retrospective application would further or retard the operation of the rule, *id.* at 106–07, 92 S.Ct. at 355–56; and (3) that retroactive application would produce substantial inequitable results. *Id.* at 107, 92 S.Ct. at 355–56.

Examining the first *Chevron* factor, adoption of a uniform federal limitations period changes the practice in this Circuit, which was clear at the time the alleged fraud was discovered, of looking to the law of the forum state for an appropriate statute of limitations for 10b–5 claims. *Welch I,* 923 F.2d at 994. As such, *Ceres* clearly adopted a new rule. *Id.*

As for the second *Chevron* factor, the Court of Appeals in *Welch I* held that if the rule in question is the new limitations period itself, its retroactive application will always further the new rule: A new, shorter period will end a lawsuit filed beyond the new limits, and a new, longer period will allow a lawsuit otherwise barred. *Id.* The Court of Appeals indicated, however, that the Supreme Court did not likely contemplate such a mechanical application of the *Chevron* test, and went on to hold that

> [b]ecause [all limitations periods] serve primarily individual, rather than institutional, interests and do so by giving potential litigants prior notice of their rights, application of a limitations period not yet in existence at the time the suit was commenced clearly does not further either of the competing interests [of advancing the remedial and deterrent purposes of the particular cause of action and preserving the defendant's interest in repose].

*Welch I,* 923 F.2d at 995. The Court of Appeals thus indicated that as the application of a new and shorter limitations period cannot effect the conduct of plaintiffs

where, as here, the new rule is announced after the expiration of that period, the second *Chevron* factor is essentially neutral since retrospective application neither furthers nor retards the operation of the rule.

Here, however, as the Lead Underwriters argue, and the Court agrees, the posture of the case highlights an important, if not the primary, purpose of the *Ceres* opinion warranting retrospective application here. *Chaus* is a putative class action, potentially involving several thousand plaintiffs. If the Court declines to apply *Ceres* retroactively, the Court will have to look to the state of each non-resident class plaintiff to determine whether their claims would be time-barred. *See Ceres*, 918 F.2d at 353. If the Court does apply *Ceres* retrospectively, however, the Court and the parties will enjoy the economy of a uniform limitations period. Indeed, the court in *Welch I*, not burdened with applying multiple limitations periods in a large class action, did not address the institutional purpose of the rule announced in *Ceres;* namely, the adoption of a uniform limitations period for section 10(b) claims which would free the courts from the effort and "crazy-quilt consequences of borrowing from state law for federal securities claims." *Id.* at 357. As the Court of Appeals stated:

> As a consequence [of referring to state law], if two suits are brought in different states seeking damages for a single act in violation of the federal securities laws, one suit may be barred while the other is not. Indeed, in a single such suit brought in a state whose law requires borrowing of the laws of an out-of-state plaintiff, the claims of some plaintiffs may be time-barred while those of other plaintiffs are not. The ABA Task Force concluded that this disarray serves no public purpose. This uncertainty and lack of uniformity promote forum shopping by plaintiffs and result in wholly unjustified disparities in the rights of parties litigating identical claims in different states. Neither plaintiffs nor defendants can determine their rights with any certainty. Vast amounts of judicial

time and attorneys' fees are wasted. Moreover, managements of publicly held companies, as well as their auditors and attorneys, are frequently unable to assess the impact of possible litigation under rule 10b–5. This deprives investors of information adequate for informed evaluation of such companies' potential liabilities.

*Id.* at 355 (citation omitted). Accordingly, as the rationale of *Ceres* would serve to streamline this action in substantial furtherance of the uniform limitations period's stated goal, the Court holds that the circumstances and posture of this case favor retrospective application.

As for the third *Chevron* factor, the courts have held that the retroactive application of *Ceres* does not produce substantial inequitable results when the statute of limitations is unchanged by retroactive application. *See, e.g., Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989) (applying retroactively the one-year/three year rule of *In re Data Access Sec. Litig.*, 843 F.2d 1537 (3d Cir. 1988) (en banc), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988)—the Third Circuit analogue of *Ceres*—after determining that plaintiffs were not prejudiced by retroactive application under *Chevron* test); *McCarter v. Mitcham*, 883 F.2d 196, 205 (3d Cir.1989); *see also Ceres*, 918 F.2d at 353 (affirming application of the *Data Access* rule to a New Jersey plaintiff pursuant to C.P.L.R. § 202).

In this case, retroactive application of *Ceres* would not produce inequitable results. If the Court applied *Ceres* retroactively, then the one-year/three-year statute of limitations would apply. If the Court did not apply *Ceres* retroactively, then the Court would look to the pertinent laws of the forum state to determine the appropriate statute of limitations, *see Zola v. Gordon*, 685 F.Supp. 354, 363 (S.D.N.Y.1988), which, for a federal court sitting in New York, will include New York's borrowing statute, C.P.L.R. § 202.[5] *Id.* (quoting *Ar-*

---

**5.** New York's borrowing statute provides:

An action based upon a cause of action accru-

ing without the state cannot be commenced

*neil v. Ramsey,* 550 F.2d 774, 779 (2d Cir. 1977)). For purposes of the borrowing statute, a cause of action accrues in the jurisdiction where plaintiff sustains loss, *see Zola,* 685 F.Supp. at 363 (quoting *Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 149–50 (2d Cir.1981)), usually plaintiffs' place of residence. *Id.* (quoting *Industrial Consultants Inc. v. H.S. Equities, Inc.,* 646 F.2d 746, 747 (2d Cir.1981)). Since three of the four named plaintiffs reside within the Third Circuit, if *Ceres* was not applied retroactively *Data Access* would apply under the New York borrowing statute. Like *Ceres, Data Access* established a uniform one-year/three-year statute of limitations for claims arising out of Section 10(b) and Rule 10b–5. *Data Access,* 843 F.2d at 1550. Since the same one-year/three-year limitations period would apply to these three plaintiffs regardless of whether *Ceres* applied retroactively, retroactive application of *Ceres* does not produce substantial inequities.[6] Moreover, there is no indication that any of the plaintiffs relied on a longer limitations period applicable under pre-*Ceres* law. Plaintiffs' 10(b) and Rule 10b–5 claims are therefore barred for failure to plead compliance with the applicable one-year/three-year statute of limitations.

Although it is unclear whether failure to affirmatively plead compliance with the limitations period applicable to claims under Section 10(b) may properly result in dismissal under Rule 12 for failure to state a claim, failure to allege compliance where a limitations defense has properly been raised may result in a Rule 12 dismissal. *See In re General Devel. Corp. Bond Lit.,* 800 F.Supp. 1128 (S.D.N.Y.1992); *Korwek v. Hunt,* 646 F.Supp. 953, 958–59 (S.D.N.Y. 1986), *aff'd,* 827 F.2d 874 (2d Cir.1987); *Pomeroy v. Schlegel Corp.,* 780 F.Supp. 980, 982–84 (W.D.N.Y.1991). As stated by the United States District Court for the Eastern District of Pennsylvania:

> Once the defendant has raised the statute of limitations defense to a securities fraud claim, it is the plaintiff's burden to demonstrate they have filed their complaint within the limitations period. Such compliance must be apparent from the complaint.

*Dolsky v. Johnson,* [Current] Fed.Sec. L.Rep. (CCH) ¶ 95,840, at 99,078, 1991 WL 3540 (E.D.Pa. Jan. 8, 1991) (citations omitted). Accordingly, for the reasons warranting dismissal of plaintiffs' §§ 11 and 12(2) claims, plaintiffs 10(b) and Rule 10b–5 claims are dismissed for failure to plead facts sufficient to satisfy the applicable one-year/three-year statute of limitations.

## CONCLUSION

For the reasons set forth in Section I.A.1, the Chaus's motion, pursuant to Rules 4(j) and 12(b) of the Federal Rules of Civil Procedure, for an order dismissing the Amended Complaint, is granted, and the Amended Complaint is hereby dismissed with prejudice as time-barred. Alternatively, for the reasons set forth in Sections II.A. and B., the Amended Complaint is dismissed as against Bernard and Josephine Chaus as time-barred motion. For the reasons set forth in Sections II.A. and B., BCI's and the Lead Underwriters' motion, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for an order dismissing the Amended Complaint, is granted, and the Amended Complaint is hereby dismissed with prejudice as time-barred as against these defendants.

SO ORDERED.

---

after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

C.P.L.R. § 202 (McKinney 1972).

**6.** *Data Access* was decided on April 8, 1988, eight months prior to service of the 1988 Complaint.