**Branco WEISS, Plaintiff,**

**v.**

**Charles B. GANZ, et al., Defendants.**

**No. 98 Civ. 1422 (LAK).**

United States District Court,
S.D. New York.

Nov. 12, 1998.

David Jaroslawicz, Jaroslawicz & Jaros, New York City, for Plaintiff.

Ralph E. Brown, Michael B. Roche, L. Andrew Brehm, Schuyler, Roche & Zwirner, Chicago, IL, Joseph E. Gasperetti, New York City, for Defendants.

### MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a Swiss citizen, brings this action against a number of defendants to recover

losses he allegedly sustained when he invested millions of dollars in an investment fund managed by the lead defendant. The amended complaint is within the jurisdiction of this Court solely because one of its nine causes of action purports to state a claim under the Securities Exchange Act of 1934 (the "Exchange Act"). As the Court concludes that the Exchange Act claim is insufficient, at least in its current form, the action is dismissed with leave to replead for a final time.

## Facts

According to the amended complaint, defendant Charles Ganz solicited plaintiff Branco Weiss to entrust funds to him as an investment advisor and fund manager.[1] Ganz allegedly represented that he would limit the risk of the funds invested and that his primary objective would be to protect against erosion of the principal.[2] In consequence, Weiss, on or about January 5, 1995, entrusted $2 million to Ganz for investment either directly or through a Ganz-controlled offshore fund, The Probitas Offshore Fund, L.P. ("Probitas, L.P.").[3]

On March 15, 1995, Weiss and Ganz met in New York, where Ganz told Weiss that his investment had generated substantial profits.[4] This led Weiss to invest another $3 million on March 31, 1995.[5]

Ganz continued to tell Weiss that his investments were doing well. He provided Weiss with a statement as of September 30, 1995 which showed that the value of Weiss' investments, net of expenses, had risen to $7,298,026.[6] This allegedly resulted in Weiss causing Southern Beach Cove, Ltd. ("SBC") to entrust an additional $2 million to Ganz in November 1995.[7] But this appears to have been the last indication of success that Weiss was to receive.

On or about August 13, 1996, Weiss was notified that SBC's $2 million investment had declined by July 31, 1996 to $661,066, a loss of more than 71 percent.[8] On February 28, 1997, Ganz notified Weiss that he was going to wind up Probitas, L.P. and that the assets would be distributed no later than June 30, 1997.[9] At some unspecified time, Weiss was advised that the $5 million invested in his own name had declined to $837,088 as of April 15, 1997 and that the value of SBC's investment had declined further, to $289,-884.[10]

On September 25, 1997, Ganz wrote to Weiss and advised that he had not wound up Probitas, L.P. The letter indicated, allegedly for the first time, that some of its investments were in "nonmarketable securities."[11]

Weiss commenced this action on February 26, 1998. Defendants moved to dismiss the complaint, which prompted Weiss to file an amended complaint. All parties have proceeded on the assumption that the pending motion to dismiss is directed to the amended complaint. Accordingly, the Court treats the motion as directed to that pleading.

The amended complaint sets forth nine causes of action, eight on various state law theories and one under Section 10(b) of the Exchange Act[12] and Rule 10b–5 thereunder.[13] The theory of the 10b–5 claim is that Ganz represented to plaintiff that his investment objective was to maximize capital appreciation while preserving the plaintiff's capital whereas Ganz intended to invest in highly speculative, untradable, unmarketable and unregistered securities and to do so an a leveraged basis, thus increasing plaintiff's

1. Am.Cpt. ¶ 24.

2. *Id.* ¶¶ 25, 46.

3. *Id.* ¶ 27.

4. *Id.* ¶ 28.

5. *Id.* ¶ 29.

6. *Id.* ¶¶ 30–31 & Ex. A.

7. *Id.* ¶ 32.

8. *Id.* ¶ 33 & Ex. B.

9. *Id.* ¶ 37.

10. *Id.* ¶¶ 34–35 & Exs. C and D.

11. *Id.* ¶ 39 & Ex. G.

12. 15 U.S.C. § 78j(b).

13. 17 C.F.R. § 240.10b–5.

risk of loss.[14] The amended complaint alleges also that Ganz, following Weiss' $2 million investment, falsely advised Weiss that he had substantial gains in his investment to date for the purpose and with the effect of inducing Weiss to increase his own investment by $3 million and SBC to invest its $2 million.[15] Additionally, plaintiff claims that Ganz was engaged in a broader pattern of trading and investment in which he allocated successful trades to Ganz Capital Management, Inc. ("Ganz Capital") and unsuccessful trades to the entity in which plaintiff's funds were invested.[16]

## Discussion
### Subject Matter Jurisdiction

The amended complaint purports to rest jurisdiction solely on the diversity statute, 28 U.S.C. § 1332.[17] It is readily apparent, however, that the Court lacks jurisdiction on that basis.

The plaintiff in this action allegedly is a citizen of Switzerland.[18] Defendant Ganz is a citizen of Florida. Defendants Ganz Capital and Probitas Advisors, Inc. both are citizens of Florida and Delaware. Defendant Probitas, L.P., a partnership, purportedly is organized under the laws of the Cayman Islands.[19] Defendant Probitas Offshore Advisors, Inc. ("Probitas Offshore") is a Cayman Islands company and a general partner of Probitas, L.P.[20] In consequence, both Probitas Offshore and Probitas, L.P. are aliens.[21]

■ It long has been established that diversity of citizenship is lacking where there are aliens on both sides of the action.[22] As plaintiff Weiss and defendants Probitas Off-shore and Probitas, L.P. are aliens, diversity or, more properly, alienage jurisdiction is lacking. In consequence, this Court lacks subject matter jurisdiction unless plaintiff's 10b-5 claim withstands defendants' motion to dismiss.

### Sufficiency of the 10b-5 Claim

Defendants raise a host of objections to plaintiff's Rule 10b-5 claim but only two need be addressed here.

■ First, defendants point out that Weiss purports to sue here not only to recover the $5 million he invested with defendants, but the $2 million invested by SBC. In order to make out a claim under Rule 10b-5, however, the plaintiff must allege and prove that it is a purchaser or seller of securities.[23] Assuming, *arguendo*, that the interest acquired by SBC when it invested with defendants included securities, it nonetheless is undeniable that Weiss was not the purchaser or seller. Accordingly, Weiss has no standing to seek to recover any part of the $2 million invested by SBC.

■ Defendants next argue that Weiss' claim is barred by the statute of limitations. They rely on *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*[24] which held that a Rule 10b-5 claim must be brought within the limitations period fixed for suits under Section 9(e) of the Exchange Act.[25] Section 9(e) which requires commencement of the action "within one year after the discovery of the facts constituting the violation and within three years after such violation." [26]

Insofar as plaintiff complains of his $2 million investment on January 5, 1995, the

**14.** Am.Cpt. ¶¶ 25, 46–47.

**15.** *Id.* ¶¶ 66–69.

**16.** *Id.* ¶¶ 72–77.

**17.** *Id.* ¶ 21.

**18.** *Id.* ¶ 1.

**19.** *Id.* ¶¶ 11, 15–16.

**20.** *Id.* ¶¶ 14–15.

**21.** Probitas, L.P., is deemed to be a citizen of every jurisdiction of which any of its partners is a citizen. *See Carden v. Arkoma Assoc.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

**22.** *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

**23.** *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

**24.** 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

**25.** *Id.* 364 & n. 9, 111 S.Ct. 2773.

**26.** 15 U.S.C. § 78i(e).

658

action is barred because it was commenced more than three years later.

 The $3 million investment of March 15, 1995 is barely within the three year limitations period, but it is far from clear that plaintiff has satisfied the one year branch of the statute. The majority of and better considered authorities hold that plaintiffs suing under sections of the Exchange Act and the Securities Act of 1933 that employ the 1 year–3 year limitations provision applicable here have the burden of affirmatively pleading facts demonstrating that they have sued in a timely fashion, as timeliness is an element of the plaintiff's cause of action.[27] The amended complaint fails to meet this requirement as to the March 15, 1995 investment, as it fails to allege when plaintiff discovered the alleged fraud and why, in the exercise of due diligence, he could not have done so earlier. Indeed, the complaint demonstrates on its face that Weiss learned in August 1996, eighteen months before the commencement of the action, that SBC's $2 million investment had shrunk to only $661,066 in eight months, certainly an unlikely occurrence in a rising market for an investment advisor who allegedly represented that his object was to conserve principal.

While the complaint fails to allege facts demonstrating that this aspect of the action is timely, the Court cannot exclude the possibility that plaintiff yet might do so. Accordingly, the dismissal in this respect will be without prejudice to repleading. Should plaintiff elect to replead, he would be well advised to pay careful attention to Rule 9(b) of the Federal Rules of Civil Procedure, which seems largely to have been ignored in framing both the complaint and the amended complaint.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss the complaint is granted. The dismissal is on the merits as to the Exchange Act claim and for lack of subject matter jurisdiction over the state law claims. The dismissal of the Exchange Act claim concerning the March 15, 1995 investment and any pendent state claims based thereon is with leave to replead provided the second amended complaint is served and filed on or before December 2, 1998.

SO ORDERED.

---

**27.** E.g., Cumis Ins. Soc. v. Citibank, N.A., 921 F.Supp. 1100, 1111 (S.D.N.Y.1996); Tregenza v. Great American Comm. Co., 823 F.Supp. 1409, 1413 (N.D.Ill.1993), aff'd, 12 F.3d 717 (7th Cir. 1993), cert. denied, 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994); In re Chaus Securities Litig., 801 F.Supp. 1257, 1265 (S.D.N.Y. 1992); Epstein v. Haas Securities Corp., 731 F.Supp. 1166, 1180–81 (S.D.N.Y.1990); Zola v. Gordon, 685 F.Supp. 354, 360 (S.D.N.Y.1988); Quantum Overseas, N .V. v. Touche Ross & Co., 663 F.Supp. 658, 662 (S.D.N.Y.1987); Beres v. Thomson McKinnon Sec., Inc., No. 85–6674, 1987 WL 16977, at *10 (S.D.N.Y.1987); Krome v. Merrill Lynch & Co., 637 F.Supp. 910, 914 (S.D.N.Y.1986); Leone v. Advest, Inc., 624 F.Supp. 297, 303 (S.D.N.Y.1985); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F.Supp. 518, 525 (S.D.N.Y.1977); Brick v. Dominion Mortgage & Realty Trust, 442 F.Supp. 283, 291–92 (W.D.N.Y.1977); see generally LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION at 1111–1113 (1993).

In view of Lampf's conclusion that the express remedy provisions of the Exchange and Securities Acts control limitations analysis for Rule 10b–5 cases, decisions holding that the express remedy sections require pleading of facts demonstrating timeliness apply also to 10b–5 complaints.