**James KOCH, et al., Plaintiffs–Appellants,**

v.

**Steven STANARD, et al., Defendants–Appellees.**

**No. 91–1841.**

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1992.

Decided April 29, 1992.

---

3. The affidavit of the President of LITH states her name as Barbara Key, not Barbara Keys as listed in the complaint.

Joseph V. Roddy, Mark T. Zubor, and Thomas Pleines (argued), Chicago, Ill., for plaintiffs-appellants.

Edward M. Kay, James O. Nolan, James T. Ferrini, Sonia V. Odarczenko, Susan Condon, Kevin J. Glenn, Kimberly A. Wilkins, Imelda Terrazino (argued), Clausen, Miller, Gorman, Caffrey & Witous; Nina Puglia, Asst. Corp. Counsel, Office of the Corp. Counsel, Appeals Div., John T. Wardrope, Robert A. Chaney, Purcell & Wardrope; and Mary L. Smith, Corp. Counsel, Office of the Corp. Counsel, Kelly R. Welsh, Benna R. Solomon, and Joan Flynn (argued), Asst. Corp. Counsel (argued), Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendants-appellees.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Six disappointed applicants for positions on Chicago's police force filed this action under 42 U.S.C. § 1983. Each passed a test of aptitude and knowledge but failed a psychological test. They demand access to the results and an opportunity to contest the judgment that they would not make good officers. Although they acknowledge that an applicant for the force has neither "liberty" nor "property" in a hope to be hired, they insist that by saying no on psychological grounds the City so stigmatized them that they are entitled to hearings to clear their names. The district court dismissed the complaint under Fed. R.Civ.P. 12(b)(6), concluding that being screened out on psychological grounds is not such a calumny that plaintiffs would be barred from other employment. 1991 U.S.Dist.LEXIS 3081 (N.D.Ill.).

*Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), holds that defamation by a public official does not deprive the victim of liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), holds that failure to hire (or renew the appointment of) an applicant for employment likewise does not deprive that person of liberty or property when there is no "legitimate claim of entitlement" to be hired. See also, e.g., *Upadhya v. Langenberg*, 834 F.2d 661 (7th Cir.1987). Yet several courts of appeals, including this one, have said that simultaneous defamation and non-appointment deprives the applicant of liberty or property, at least when the disparaging word closes other opportunities for employment in that line of work. E.g., *Perry v. FBI*, 781 F.2d 1294, 1300 (7th Cir.1986) (in banc). Last year's decision in *Siegert v. Gilley*, ── U.S. ──, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), raises the question whether *Perry* and similar decisions—on which plaintiffs' case depends—are sound. *Siegert's* employer reassigned him in a way that amounted to constructive discharge. He quit. Another employer withdrew an offer

on learning the stated reason for his earlier separation. Even after assuming that the first employer was lying about the reasons, maliciously preventing Siegert from obtaining other employment, the Court held that the slander did not call for a hearing given "the lack of any constitutional protection for the interest in reputation." 111 S.Ct. at 1794.

▪ Whether *Siegert* has pulled the rug out from under plaintiffs' theory is a question we need not resolve. For unless the defendants published the defamatory material, the plaintiffs have no case. *Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). The complaint alleges that disclosure is inevitable because other potential employers will inquire why Chicago turned them down. It does not allege, however, that another police force has inquired of Chicago about any of the plaintiffs, let alone that Chicago has divulged derogatory information in response. A potential for future questions and answers is just that—a potential. *Clark v. Maurer*, 824 F.2d 565, 567 (7th Cir.1987), referred to the information in the files as a ticking time bomb but added that until the bomb explodes there is no defamation, and hence no claim. *Johnson v. Martin*, 943 F.2d 15 (7th Cir.1991), applied this principle to hold that a probationary officer of the Chicago police force let go after failing a drug test could not sue until the force revealed that information to someone outside the government. Plaintiffs do not try to distinguish *Bishop*, *Clark*, or *Johnson;* they do not acknowledge the existence of those cases. At oral argument counsel for plaintiffs opined that this case is "just like" the problem presented when an applicant for employment fails a drug test—apparently not recognizing that *Johnson* involved drug tests. Indeed plaintiffs' situation *is* just like testing positive for drugs, which is why they must lose.

▪ Plaintiffs filed this case on behalf of a class. The district court delayed ruling on the propriety of maintaining this case as a class action until the parties had briefed the motion to dismiss. At the same time as he dismissed the complaint on the merits, the judge struck the class allegations from the complaint. Although the judge did not explain this delay, the only reason we can imagine for departing from the mandate of Fed.R.Civ.P. 23(c)(1) that the court act on the subject "[a]s soon as practicable after the commencement of an action brought as a class action" is a belief that a class should not be certified when the case is doomed on the merits. See *Illinois State Rifle Ass'n v. Illinois*, 717 F.Supp. 634, 639 n. 12 (N.D.Ill.1989). Nothing in Rule 23 supports such a bias. Defendants no less than plaintiffs are entitled to the fruits of victory. A string of cases in this circuit reinforces the message of Rule 23(c)(1): The court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiffs' legal theory. *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 947 (7th Cir.1989) (in banc), reversed on other grounds, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Bennett v. Tucker*, 827 F.2d 63, 66–67 (7th Cir.1987); *Hickey v. Duffy*, 827 F.2d 234, 237 (7th Cir.1987). Plaintiffs gain nothing by this conclusion, however. Any error in striking the class allegations wounds defendants, who have not appealed. Having lost on the merits, plaintiffs' counsel serves other similarly situated persons best by letting the matter drop, rather than by trying to drag everyone else down with his clients.

Affirmed.

FLAUM, Circuit Judge, concurring.

I agree with Judge Easterbrook that the plaintiffs have not been deprived of a liberty interest under the fourteenth amendment because the defendants have not published the results of their psychological tests. However, I must take issue with his suggestion, raised in dicta, that *Siegert v. Gilley*, — U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), may have doomed plaintiff's case even had the defendants done so.

As I read it, *Siegert* is consistent with prior case law providing that a public official's publication of a defamatory statement may infringe an individual's liberty

interest if the statement (1) stigmatizes the individual in a manner that substantially forecloses opportunities for future government employment, and (2) is made incident to an adverse current employment decision. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Clark v. Maurer*, 824 F.2d 565 (7th Cir.1987). It is indeed true, as Judge Easterbrook observes, that *Siegert* found the defamatory statement at issue to be not actionable (in a civil rights lawsuit) owing to "the lack of any constitutional protection for the interest in reputation." *Siegert*, 111 S.Ct. at 1794. But underlying that finding is the fact that the defamatory statement *only* affected the plaintiff's opportunities for future government employment; the Court clearly and unequivocally stated that the statement was *not* made incident to the plaintiff's loss of current employment: "[t]he alleged defamation was not uttered incident to the termination of Sigert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later." *Id.; see also id.* (actionable stigmatization in *Roth* "made in the context of the employer discharging or failing to rehire a plaintiff"). As such, *Siegert* is analogous to *Paul* because the defamatory statement therein satisfied only the first element of this brand of liberty deprivation claim (as I number the elements above).

To the extent that *Siegert* modified the legal landscape, it did so with regard to the second element by limiting the circumstances under which statements are considered to have been made incident to an adverse employment decision. That modification does not affect the case *sub judice*, for the allegedly defamatory test results were unquestionably incident to—in fact they were the motivating factor behind—the plaintiffs being denied positions on the police force. This case is properly decided under *Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976), and *Clark*, 824 F.2d at 567, which stand for the proposition that defendants who do not publish do not infringe liberty interests.