W. Kenneth TREGENZA, James E. Haas and Ernest B. Seegers, on behalf of themselves and a class of persons similarly situated, Plaintiffs,

v.

GREAT AMERICAN COMMUNICATIONS COMPANY, a Florida corporation, and Shearson Lehman Brothers, Inc., a Delaware corporation, Defendants.

No. 92 C 6384.

United States District Court,
N.D. Illinois, E.D.

April 30, 1993.

Terry Rose Saunders and Arthur T. Susman, Susman, Saunders & Buehler, Chicago, IL, for plaintiffs.

Timothy J. Murphy, Steven J. Rotunno, Sedgwick, Detert, Moran & Arnold; Jerry M. Santangelo, H. Nicholas Berberian, Neal, Gerber & Eisenberg, Chicago, IL; and James E. Burke and James R. Matthews,

Keating, Muething & Klekamp, Cincinnati, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff, W. Kenneth Tregenza, is a resident of the state of Michigan who purchased shares of defendant, Great American Communications Company ("GACC") from defendant Shearson Lehman, Inc. ("Lehman") on October 11, 1989. Plaintiff, James E. Haas, is also a Michigan resident who purchased GACC shares through Lehman between November 15, 1989 and November 2, 1991. Plaintiff, Ernest B. Seegers, is a resident of Illinois who purchased shares of GACC through Lehman between November 10, 1989 and June 10, 1991. Defendant, GACC, is a Florida corporation which owns and operates television and radio stations and produces animated television programs and feature films. GACC's principal operations are conducted through Great American Broadcasting Company in Cincinnati, Ohio. Defendant, Lehman, is a Delaware corporation with its principal place of business in New York. Lehman Brothers is a division of Lehman that maintains retail brokerage sales offices in Chicago, Illinois.

Plaintiffs bring their amended class action complaint pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), the Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5, and Section 12(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77l (2). This court has subject matter jurisdiction under § 27 of the Exchange Act, 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Plaintiffs' supplemental state claims allege violation of the Illinois Securities Law of 1953, Ill.Rev.Stat., ch. 121½, ¶¶ 137.1 et seq., and negligent misrepresentation.

Lehman has filed a motion to dismiss plaintiffs' amended complaint in its entirety for failure to state a claim and because the federal claims were filed beyond the statute of limitations. Fed.R.Civ.P. 12(b)(6). GACC has also filed a motion to dismiss for failure to state a claim, for failure to plead fraud with particularity, Fed.R.Civ.P. 9(b), and on statute of limitations grounds. Because defendants rely on documents outside their pleadings, the court notified the parties at the time the motions were presented that it would treat defendants' motions to dismiss on statute of limitations grounds as motions for summary judgment. See Fed.R.Civ.P. 12(b) (last sentence).

■ On a motion to dismiss, all well-pleaded factual allegations are accepted as true and are construed in favor of claimants. *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir.1992). "Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Id.* The standard for summary judgment is similar but allows examination of materials outside the complaint. On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 563 (7th Cir.1991). Summary judgment is appropriate only where there is "no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Whether or not a fact is material is governed by substantive law. *Id.* The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 473 (7th Cir.1988). Summary judgment is not proper when there is a dispute over facts which might affect the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. The dispute must be genuine, that is, the party opposing the motion for summary judgment may not "rest on the mere allegations of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Id.* The nonmovant must also make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Plaintiffs bring this action as a shareholder class action. Fed.R.Civ.P. 23(a), (b). In general, the court should make a determination whether the complaint is appropriate for class certification "[a]s soon as practicable after the commencement of [such] an action." Fed.R.Civ.P. 23(c). Whether the case should proceed as a representative action must be determined promptly and "without regard to the virtues of the plaintiffs' legal theory." *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992).[1] This determination should generally be made prior to consideration of motions to dismiss and for summary judgment.

■■ Plaintiffs may maintain this action on behalf of the represented class only if they satisfy the requirements of Fed.R.Civ.P. 23(a) and 23(b). Plaintiffs have the burden of establishing that the requirements of Rule 23 have been met and that the case is appropriate for class-wide adjudication. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir.1977). Plaintiffs have not moved for certification of the class and defendants have not made any motion directed to the class allegations. This court is nevertheless obligated to rule on class certification. *See Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir.1988). There has been no showing that any of the named plaintiffs would be adequate class representatives. On this record, class certification must be denied. To the extent either party desires a reconsideration on class certification on a more complete record, a motion must be filed within 10 days, under Fed.R.Civ.P. 59(e). *Cf. Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992).

According to the amended complaint, in October 1987, GACC acquired Taft Broadcasting Company ("Taft") for approximately $1.5 billion and changed its name to Great American Broadcasting Company. To finance the acquisition, GACC issued $285 million of 14⅞% Senior Subordinated Bonds due 1999 and GACC's holding company borrowed $670 million in bank loans and issued 137.5 million of 13¼% notes due 1996. In addition, GACC issued 2.7 million shares of its own common stock to Taft shareholders.

In 1989 GACC wished to reduce the outstanding debt from the Taft transaction by issuing new GACC stock in exchange for outstanding bonds and notes. GACC entered an agreement with Lehman whereby Lehman would purchase and retire $49.4 million of the Taft debt from the Taft debtholders in exchange for Lehman receiving 3.65 million newly issued shares of GACC common stock.

In order to allow Lehman to profit from the transaction, the new shares of GACC had to fetch approximately $12 per share. At the time of the Lehman transaction, GACC was in poor financial condition and GACC could not have sold newly issued stock for $12 per share if it had to file a registration statement and prospectus disclosing the full extent of its financial condition. Thus the need to make the initial stock transaction with Lehman. To ensure Lehman's value in the shares, Lehman would pre-sell the stock before any announcement of the Taft debt repurchase. To encourage Lehman's brokers to recommend the shares to their clients, Lehman's brokers were given a $1 per share commission. Furthermore, Lehman and GACC directed the brokers to use a persuasive script containing false and misleading statements to sell the stock. The brokers were successful and sold all 3.65 million shares to plaintiff Tregenza and others on October 11, 1989.

Using the script to sell the shares, brokers stated that GACC stock was worth twice as much as the current selling price and that within two years the stock should be well into the "$20's," that downside risk at the current price level was less than 10%, and that such prominent names in the investment community as Mario Gabelli and Michael Steinhardt each had holdings in GACC of between 500,-000 and 1 million shares, implying that these individuals had purchased GACC stock. In fact, plaintiffs allege, the price of GACC stock was grossly inflated at $12 per share, GACC was so laden with debt that GACC

1. District courts must not delay certification on the belief that "the case is doomed on the mer-

its." Koch v. Stanard, 962 F.2d at 607.

stock at any price was extremely risky and highly speculative, and Gabelli and Steinhardt had not purchased their GACC shares, but rather had received them for their Taft stock in the Taft transaction in 1987. The Lehman brokers also failed to mention that the stock was newly issued, that Lehman was pre-selling the stock to the public at a price that would guarantee Lehman a profit, that GACC's poor cash flow and burdensome long term debt made the stock significantly less valuable than the $12 sales price, that GACC could not have retired the debt through a direct public offering, nor that Lehman was receiving $1 per share commission, which was higher than the usual and customary commission. Additionally, defendants never disclosed the fact that the shares being presold on October 11, 1989 were obtained on October 12, 1989 by Lehman in exchange for the debt retirement.

Plaintiffs also allege that after the October 11, 1989 sale, Lehman continued to sell GACC stock at inflated prices through December 17, 1991 and that GACC knew and consented to Lehman's sales technique. Lehman brokers allegedly obtained inflated GACC prices during the period by again using a script containing false and misleading statements. Lehman brokers stated that GACC was worth far more than the market price of the stock when, in fact, GACC stock was grossly inflated. In June 1990, Lehman represented that the assets of GACC were worth $14 to $20 per share, at a time when the stock was trading at $5½ to $7½ per share. Lehman brokers stated that Carl Lindner, GACC's largest shareholder, was standing behind GACC and would not allow the price to decline further, when in fact, Lindner could not or would not stop the continuing stock slide. Brokers stated that GACC was selling some assets, including three substantial interests in other corporations, to retire debt and improve profitability when, in fact, the sale of these assets was insufficient to recover profitability. Finally, the brokers represented that GACC's stock prices would rise to a price comparable[2] to stock prices of other networks such as ABC and CBS when, in fact, GACC's debt made the comparison impossible. Plaintiffs, Haas and Seegers, purchased stock during the period after October 11, 1989.

Defendants argue that plaintiffs' federal securities claims were filed beyond the one-year statute of limitations applicable to plaintiffs' claims. 15 U.S.C. § 77m (Section 12(2)); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (Section 10(b) and Rule 10b–5); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991) (Section 10(b) and Rule 10b–5). Defendants argue that the one-year statute of limitations applicable to both the § 10(b) and § 12(2) claims begins to run when plaintiffs discover, or in the exercise of reasonable diligence, should have discovered the alleged violation. Plaintiffs argue that an "inquiry notice" standard is not applicable to the one-year statute of limitations for § 10(b) and Rule 10b–5 claims.

Prior to the *Lampf* decision, the Seventh Circuit applied a one-and-three year statute of limitations borrowed from § 13 of the Securities Act. *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1390 (7th Cir.1990). In *Lampf*, the Supreme Court ruled that a one-and-three statute of limitations should be applied to such cases, but that the source of that limitation was § 9(e) of the Exchange Act. —— U.S. at ——, 111 S.Ct. at 2781. Section 9(e) of the Exchange Act provides that any action must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation" but includes no express "inquiry notice" language. 15 U.S.C. § 78i(e). By contrast, § 13 of the Securities Act expressly provides that the one-year period begins after "discovery of the untrue statement or the omission, or after such discovery *should have been made* by the exercise of reasonable diligence." 15 U.S.C. § 77m (emphasis added).[3] Plaintiffs rely on this difference in the express language of the

---

2. Comparable in the sense of price over cash flow.

3. Section 13 also provides that "[i]n no event shall any such action be brought ... more than three years after ... the sale." 15 U.S.C. § 77m.

two statutes in arguing that "inquiry notice" no longer applies to the one-year statute of limitations applicable to § 10(b) and Rule 10b–5 claims.

The Supreme Court in *Lampf* did not directly address, nor prescribe how § 9(e)'s one-year limitation was to be applied. —— U.S. at —— n. 9, 111 S.Ct. at 2782 n. 9. The Court merely stated that "[t]o the extent that [the differences in the statutes] in the future might prove significant, we select [§ 9(e) of the Exchange Act] as the governing standard." *Id.* Courts following *Lampf* are divided over whether the objective standard of "inquiry notice," as opposed to the subjective standard of actual knowledge, continues to apply to § 10(b) cases under § 9(e). Several courts have continued to apply the inquiry notice standard by reading such a requirement into the statute. *See Menowitz v. Brown,* 991 F.2d 36, 41–42 (2d Cir.1993) ("discovery" under Exchange Act limitation 78i(e) "includes constructive or inquiry notice"); *Anixter v. Home–Stake Production Co.,* 947 F.2d 897 (10th Cir.1991), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992); *Manning v. Maloney,* 787 F.Supp. 433 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3d Cir.1992); *Klein v. Goetzmann,* 810 F.Supp. 417 (N.D.N.Y.1993); *Pomeroy v. Schlegel Corp.,* 780 F.Supp. 980 (W.D.N.Y. 1991); *see also Otto v. Chauncey,* 816 F.Supp. 458 (N.D.Ill.1991) (noting that nothing in *Lampf* affected the application of the notice inquiry standard); *Berning v. A.G. Edwards & Sons, Inc.,* 774 F.Supp. 480, 482–83 (N.D.Ill.1991), *rev'd on other grounds,* 990 F.2d 272 (7th Cir.1993) (dicta noting *Anixter* ); *Rosenberg v. Hano,* 121 F.2d 818, 821 (3d Cir.1941) (plaintiff filed § 9 claim on representations that stock would go higher, plaintiff's claim was properly a § 13 claim; court noted difficult question implicit in different language of § 9; Prompt and gradual fall of stock should have placed plaintiff on notice under § 13). Several courts, relying on the express language in § 9(e), have determined that "inquiry notice" does not apply to 10(b) and Rule 10b–5 cases after *Lampf.*

*See In re Digital Microwave Corp. Securities Litigation,* No. E–90–20241RUW (EAI), 1992 WL 370831 (N.D.Cal. Oct. 19, 1992); *Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196 (S.D.N.Y.1992); *Slavin v. Morgan Stanley & Co., Inc.,* 791 F.Supp. 327 (D.Mass.1992); *Hauman v. Illinois Power Co.,* No. 89–1130, 1991 WL 354887 (C.D.Ill. Aug. 29, 1991) (decided prior to *Anixter* ).[4]

In selecting § 9(e), the Supreme Court "did not necessarily indicate a preference for the type of notice of the violation but sought a 'governing' standard to link the implied § 10(b) remedy to those express securities causes of action which uniformly require [claims be brought] one year after notice of the violation and not more than three years after the violation." *Anixter,* 947 F.2d at 899. The Seventh Circuit's discussion of this limitation in *Short v. Belleville Shoe,* 908 F.2d at 1385, which applied the inquiry notice standard, was cited in *Lampf* with approval. *Anixter,* 947 F.2d at 899 n. 4.

In *Lampf,* the Supreme Court rejected application of the equitable tolling doctrine because the doctrine is "fundamentally inconsistent with the 1–and–3–year structure" of § 9(e). —— U.S. at ——, 111 S.Ct. at 2782. The *Hauman* court (prior to *Anixter* ) found this holding relevant to the interpretation of "discovery" under § 9(e) and rejected inquiry notice. 1991 WL 354887 at *1. The *Hauman* court pointed to the Supreme Court's statement that "[t]he 1–year period, *by its terms, begins after discovery of the facts constituting the violation,* making tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling." *Id.* (emphasis added). Therefore, the *Hauman* court reasoned, under § 9(e), the one-year limit is essentially "tolled" to a maximum of three years, however the one-year limit follows a subjective knowledge standard.

*Lampf*'s rejection of equitable tolling does not have such broad implications. In rejecting equitable tolling, the Supreme Court was only ensuring the effectiveness of the stat-

---

**4.** As an initial matter, it should be noted that the Seventh Circuit, which itself applied the inquiry notice doctrine prior to *Lampf,* requires district courts to follow, in the absence of Seventh Circuit authority, the consistent decisions of other Circuit Courts. *See Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987).

ute's three-year repose. *Id.* ("The 3–year limit is a period of repose inconsistent with tolling.") With respect to the one-year limit, equitable tolling is equally "unnecessary" to either a subjective discovery or an objective discovery-inquiry notice limitation. Equitable tolling tolls the statute where the party remains in ignorance of the fraud "without any fault or want of diligence or care on his part." *Id.* A party cannot both have inquiry notice and merit equitable tolling. The Supreme Court did not specifically overrule the application of an "inquiry notice" standard in *Lampf.* Therefore, following the interpretations of the Second and Tenth Circuits, the inquiry notice standard applied by the Seventh Circuit in *Belleville Shoe* continues to apply to the one-year statute of limitations in § 10(b) and Rule 10b–5 cases.[5]

Under inquiry notice, the statute of limitations does "not await [plaintiffs'] leisurely discovery of the full details of the alleged scheme." *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir.1974); *DeBruyne v. Equitable Life Assur. Soc. of the U.S.,* 920 F.2d 457, 466 (7th Cir.1990); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1544 (7th Cir.1990). Plaintiffs must file within one year of discovery of the facts constituting the fraud or within one year after discovery should have been made through reasonable diligence. *DeBruyne,* 920 F.2d at 466. While an objective reasonable diligence standard "does not lend itself easily to summary judgment, neither is such a motion always doomed to failure." *Id.*

■ Defendants argue that the dramatic decline in GACC stock price from $12 per share in October 1989 to approximately $2 per share by October 1990, in direct contradiction of the alleged misrepresentations received in the fall of 1989, put plaintiffs in a position of inquiry and actual notice. Defendants argue that the drop in stock price should have aroused suspicion regarding the alleged misrepresentations as to both the October 11, 1989 transaction with Tregenza

and the subsequent transactions by Haas and Seegers. Defendants cite *Hupp v. Gray,* 500 F.2d 993, 996–97 (7th Cir.1974) in support. In *Hupp,* plaintiff's § 10(b) claims were barred by the statute of limitations and plaintiff urged equitable tolling. 500 F.2d at 996. Affirming dismissal of plaintiff's claims, the Seventh Circuit determined that equitable tolling was unavailable because plaintiff had not used reasonable diligence in investigating potential claims. At the time of the sale, the defendant-broker had told the plaintiff that the stock might go much higher because the company was about to receive an important contract. In direct contradiction of the broker's representations, the stock price plummeted from the purchase price of $47 per share in January 1966 down to $17½ per share by March 1967. In affirming dismissal of plaintiff's complaint, the *Hupp* court stated:

> Even a wholly unsophisticated investor should have realized in March 1967 ... the existence of facts sufficient to precipitate [suspicion]. The sharp fall in the market price was not a concealed fact but, rather, was clearly and painfully revealed to the plaintiff. "At the very least, [the stock drop] should have aroused suspicion or curiosity on the part of plaintiff." ... [Plaintiff] could easily have inquired [of another broker] what had happened to [the company.]

*Id.* at 996–97.

Plaintiffs are put on inquiry notice when there are "storm warnings" that would alert a reasonable investigator to the possibility of fraudulent statements or omissions in his securities transaction. *DeBruyne,* 920 F.2d at 467; *see also Astor Chauffeured Limousine,* 910 F.2d at 1544. In *DeBruyne,* the court held that "storm warnings" existed when plaintiffs admitted that they had received a letter which made them "suspicious" over one year prior to filing the complaint. 920 F.2d at 466; *see also Davidson v. Wil-*

---

**5.** There are at least three drawbacks to an actual knowledge standard. First, plaintiffs are discouraged from taking actions to bring the fraud to light. Second, defendants lose the security of repose. And third, defendant are prejudiced in their ability to meet plaintiffs' allegations.

*Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir.1993). An actual knowledge standard, as this case demonstrates, would have the effect of eviscerating the one-year limitation and creating a *de facto* three-year limitation.

*son,* 973 F.2d 1391 (8th Cir.1992) (storm warnings put plaintiff on inquiry notice where form K–1 reflecting fallacy of representations was received over one year before suit). Plaintiffs argue that these cases are distinguishable in that they involved plaintiffs who were in receipt of documented information but simply failed to read it. In this case, plaintiffs argue they lacked "access to information that would give plaintiffs knowledge of the fraud." [6]

Plaintiffs' most concise argument is that because the Lehman brokers made multiple misrepresentations regarding the value of the stock, the value of GACC's assets and the persons standing behind GACC stock, that the market decline was not sufficient to put them on inquiry notice. *See Jolly v. Pittore,* Fed.Sec.L.Rep. (CCH) ¶ 96,943, 1992 WL 196813 (S.D.N.Y.1992) (genuine issue of material fact regarding inquiry notice where letter sent more than one year prior to filing blamed partnership problems on the economy); *see also Robertson v. Deloitte, Haskins & Sells,* 732 F.Supp. 979 (E.D.Ark.1990) (receipt of bankruptcy petition did not create inquiry notice that offering memorandum fraudulently represented condition of general partner). Defendants, however, point to numerous cases indicating that a stock slide like the one in this case amounts to a "storm warning" sufficient to put plaintiffs on inquiry notice. *See Buder v. Merrill Lynch Pierce, Fenner & Smith,* 644 F.2d 690, 692 (8th Cir.1981) (investor received reports on investments showing poor performance, putting him on inquiry notice of possible misrepresentation of soundness and risk of investment by broker); *Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1342–45 (8th Cir. 1980) (unread confirmation slips indicated bond values were declining and being sold at a loss despite broker's assertion of safety); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) (broker failed to explain highly speculative nature of securities; plaintiff knew that stocks were declining precipitously; inaccuracy of broker's prediction that company stock would split and increase divi-

dend was demonstrated by fact that events never occurred; plaintiff on inquiry notice); *Gaudin v. KDI Corp.,* 576 F.2d 708, 712 (6th Cir.1978) (fact that none of glowing promises occurred and that stock dropped, should have placed plaintiffs on notice); *Hecox v. R.G. Dickerson & Co.,* No. 84–1789, 1987 WL 14502, at 12, 1987 U.S.Dist. LEXIS 13901, at 13 (D.Kan. Jan. 12, 1987) (statute begins to run when investor learns that reportedly low risk/high potential investment is performing directly contrary to those representations); *Murray v. Shearson Hayden Stone, Inc.,* 524 F.Supp. 304, 305–6 (N.D.Ga.1980); *Bresson v. Thomson McKinnon Securities, Inc.,* 641 F.Supp. 338, 345 (S.D.N.Y.1986); *see also Majeski v. Balcor Entertainment Co. Ltd.,* 786 F.Supp. 1458, 1466 (E.D.Wis.1992) (plaintiffs put on notice where warnings contained in prospectus).

In this case, plaintiffs claim the following representations by Lehman brokers on October 11, 1989: that the stock was worth twice as much as the selling price and would be selling well into the $20's, that downside risk was limited to 10% and that prominent persons in the investment community were holding large amounts of the stock. Beginning in November, 1989, the Lehman brokers are alleged to have represented that: GACC was worth far more than the market price of its stock when, in fact, GACC stock was grossly inflated; that the assets of GACC were worth $14 to $20 per share, at a time when the stock was trading at $5½ to $7½ per share; that Carl Lindner, GACC's largest shareholder, was standing behind GACC and would not allow the price to decline further, when in fact, Lindner could not or would not stop the continuing stock slide; that GACC was selling some assets, including three substantial interests in other corporations, to retire debt and improve profitability when, in fact, the sale of these assets was insufficient to recover profitability; and that GACC's stock prices would rise to a price comparable to stock prices of other networks when, in

---

**6.** Plaintiffs also make a "futility" argument, that had they asked about the stock price, they would have been told the same reassuring statements they were told when they purchased the lower

priced shares. However, inquiring of the same broker suspected of having misrepresented information seems neither prudent nor diligent.

fact, GACC's debt made such a comparison impossible.

The fallacy of all of these representations became very clear at most one year after October 11, 1989. By October 1990, GACC stock had ended a steady and consistent slide and was trading in the $1 and $2 range, down from its price one year earlier of approximately $12.[7] Nonetheless, plaintiffs continued to purchase GACC stock and, therefore, were very aware of the stock slide. Plaintiffs' complaint characterizes GACC's stock slide as a slow decline from approximately $12 per share in October, 1989 to approximately $1 per share by December, 1991. In reality, GACC stock hit the low one and two dollar mark by October 1990, much more than a year before plaintiffs filed their complaint. Although the sale of Hanna Barbera, which Lehman brokers alleged in June 1990 would provide $350–400 million, but ultimately only produced $255 million, was not completed until December 1991, this fact alone did not prevent plaintiffs from being placed on notice by the stock slide. Plaintiffs do not rely on the Hanna Barbera sale to justify their delay in filing.[8] Plaintiffs were on notice of the possible fallacy of Lehman's predictions regarding the effect of the Hanna Barbera sale much earlier than December 1991, as the sale was not accomplished until nearly two years after the statements were allegedly made.

Plaintiffs' complaint was filed September 21, 1992, one month within the three-year limit from plaintiff, Tregenza's initial purchase on October 11, 1989, and almost that long after Haas' and Seegers' first transactions in November, 1989. Haas and Seegers, argue in their response brief that they did not become aware of an alleged fraud until an article that appeared in the February, 1992 issue of *Equities* magazine called the relationship between Lehman and GACC into question.[9] Similarly, plaintiff Tregenza argues in the response brief that he first became aware of the possible violations when his broker, Tim Hayes, passed on a rumor in March, 1992. *See* Tregenza affid. ¶ 9.

Having accepted as true plaintiffs' allegations regarding defendants' misrepresentations and omissions, there is no genuine issue of material fact as to the enormous stock slide which occurred throughout 1990. As a matter of law, plaintiffs were on inquiry notice and should have discovered the facts constituting the violation more than one year prior to the filing of their complaint. Therefore, plaintiffs' § 10(b) and Rule 10b–5 claims will be dismissed as time-barred.

The same inquiry notice standard, and a one-and-three year limitation, also applies to plaintiffs' § 12(2) Securities Act claims. 15 U.S.C. § 77m. Therefore, the statute of limitations applicable to either plaintiffs' § 10(b) or § 12(2) claims begins to run at the same time. Plaintiffs' § 12(2) claims are also time-barred and will be dismissed.

Not only are plaintiffs required to file within the relevant statute of limitations, but they are also required to affirmatively plead facts showing compliance with the one-year statute of limitations applicable to their claims. *Davidson v. Wilson*, 973 F.2d 1391, 1402 n. 8 (8th Cir.1992) (dismissing plaintiff's § 12(2) claim for failure to affirmatively allege compliance with statute of limitations); *In re VMS Securities Litigation*, 752 F.Supp. 1373, 1389 (N.D.Ill.1990) (dismissing § 12(2) and § 10(b) claims and noting failure to affirmatively plead compli-

---

**7.** Based on defendants' uncontroverted stock price information.

**8.** In fact, the amended complaint does not plead any facts indicating exactly when plaintiffs discovered the violations.

**9.** The affidavits of plaintiffs, Haas and Seegers state that the February, 1992 *Equities* article "suggested that Lehman and GACC first artificially inflated the price of GACC [stock] to sell a block of unregistered stock in October, 1989" and "thereafter, Lehman, GACC and prominent 'short' sellers conspired to artificially depress the

price of the stock, perhaps for the purpose of allowing GACC to buy back its debentures at artificially low prices." As defendants note, the rationale propounded for defendants' attempt to depress the stock price does not make immediate sense. Nonetheless, it is the allegation that defendants artificially depressed the stock, regardless of the reason, which is relevant to the inquiry on summary judgment. Furthermore, the *Equities* article does not refer to the initial preselling agreement and does not indicate that GACC was involved in Lehman's alleged scheme.

ance with statute of limitations); *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1312 (N.D.Ill.1984) (citing *Adair v. Hunt Int'l Resources Corp.,* 526 F.Supp. 736, 748–49 (N.D.Ill.1981)) (§ 12(2) claim dismissed for failure to affirmatively allege limitations compliance); *In re Chaus Securities Litigation,* 801 F.Supp. 1257, 1266 (S.D.N.Y.1992). With the exception of ¶ 43 [10] of the amended complaint, plaintiffs fail to affirmatively allege when and how each plaintiff discovered the untrue statements, the reasons the untruth of the statements was not discovered earlier than one year after they were made, and the efforts made to discover the untruths. *See Chaus,* at 1266. This failure to plead compliance with the applicable limitations period also justifies dismissal of plaintiffs' federal securities claims.

■ Additionally, defendants argue that § 12(2) does not apply to after market purchases and that, therefore, the § 12(2) claims of at least Haas and Seegers should be dismissed. Although plaintiff notes the split of authority on this issue and cites various cases including after market transactions within § 12(2), *see e.g., Farley v. Bair, Patrick & Co.,* 1991 Fed.Sec.L.Rep. (CCH) ¶ 95,658 (S.D.N.Y.1991); *Elysian Federal Sav. Bank v. First Interregional Equity Corp.,* 713 F.Supp. 737, 749 (D.N.J.1989); *In re Ramtek Sec. Litigation,* 1990 Fed.Sec.L.Rep. (CCH) ¶ 95,483 at 97,521, 1990 WL 157391 (N.D.Cal. 1990); *Scotch v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 709 F.Supp. 95, 98 (M.D.Pa.1988); *Wilko v. Swan,* 127 F.Supp. 55, 58 (S.D.N.Y.1955), *aff'd on other grounds,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Third Circuit authority and other cases in this district holding that § 12(2) does not apply to after market purchases are both more numerous and more persuasive, *see Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682 (3d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991); *Fujisawa Pharmaceutical Co. v. Kapoor,* 814 F.Supp. 720 (N.D.Ill.1993) (compiling cases, noting vast majority of cases generally hold § 12(2) only applies to initial offerings); *Pacific Dunlop Holdings, Inc. v.*

*Allen & Co., Inc.,* 90 C 5678, 1991 WL 348493 (N.D.Ill. May 15, 1991) (app. pending). *Fujisawa* represented a case factually very similar to this case. In that case, two entities essentially owned all the public stock of a corporation and sold it. In *Fujisawa,* defendants argued that plaintiffs failed to state a § 12(2) claim because the stock was not sold in an initial offering. The court, noting a possible exception to this general rule where a majority insider sold stock, declined to hold that plaintiffs had failed to state a § 12(2) claim. In so ruling, however, the *Fujisawa* court reviewed the large volume of cases involving application of § 12(2) to after market transactions stating: "[T]he great weight of authority" seems to support the position that § 12(2) does not apply to after market transactions. *Fujisawa,* 814 F.Supp. 720; *see Ballay,* 925 F.2d at 687–91 (express language and intent of Congress leads to finding that 12(2) applies only to initial offerings); *Pacific Dunlop Holdings, Inc. v. Allen & Co.,* No. 90 C 5678, 1991 WL 348493 (N.D.Ill. May 16, 1991) (adopting the holding of *Ballay* ).

The Third Circuit's decision in *Ballay* that § 12(2) does not apply to after market transactions was based on the language of Section 12(2), its legislative history, the structure and purpose of the Securities Act, including the specific intent to regulate initial offerings, and policy considerations. Plaintiffs argue, with some cited support, *see* 9 L. Loss & J. Seligman, *Securities Regulation* (3d ed.) 1417 (1992), that *Ballay* was based on the mistaken belief that the Securities Act applies exclusively to new stock issues. Supporting this argument, plaintiffs note that § 17(a) of the Securities Act is not limited to initial offerings. Plaintiffs apparently ignore *Ballay* 's analysis of legislative history indicating that § 17 was intended to have broader application than § 12(2). 925 F.2d at 691–92. Since the Third Circuit and the great majority of district courts examining this issue have determined that § 12(2) does not apply to after market transactions, those

---

**10.** Paragraph 43 of the amended complaint alleges "[p]laintiffs and members of the class did not know of the untruths and omissions alleged

above." The *Caliber* court dismissed an almost identical § 12(2) complaint. 583 F.Supp. at 1312 & n. 8.

claims of plaintiffs, Haas and Seegers, will also be dismissed for failure to state a claim.

Plaintiffs' state claims are brought under supplemental jurisdiction. 28 U.S.C. § 1367. Because plaintiffs' federal claims will be dismissed before trial, this court declines to exercise jurisdiction over those supplemental state claims. *Martin–Trigona v. Champion Federal Sav. & Loan Ass'n,* 892 F.2d 575, 578 (7th Cir.1989); *Midwest Grinding, Inc. v. Spitz,* 769 F.Supp. 1457, 1470 (N.D.Ill. 1991). They will be dismissed without prejudice.

IT IS THEREFORE ORDERED that the motions of defendants, Great American Communications Company and Shearson Lehman Brothers, Inc., to dismiss the amended complaint of plaintiffs, Tregenza, Haas and Seegers [27, 28] are granted. Class certification is denied. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs, dismissing plaintiffs' federal claims stated in Counts I and II. Plaintiffs' individual state claims in Counts III and IV and class allegations are dismissed without prejudice.