Kimberly S. JOHNSON, on behalf of herself and all others similarly situated, Plaintiff,

v.

ROHR–VILLE MOTORS, INC., d/b/a Saturn of Waukegan, and Mercury Finance Company of Wisconsin, Defendants.

Mercury Finance Company of Wisconsin, Third–Party Plaintiff,

v.

Western Diversified Services, Inc., Third–Party Defendant.

No. 95 C 1032.

United States District Court, N.D. Illinois, Eastern Division.

May 14, 1999.

Daniel A. Edelman, Cathleen Combs Cohen, Tara Leigh Goodwin, Daniel Payne Lindsey, Edelman & Combs, O. Randolph Bragg, Horwitz, Horwitz & Associates, James Eric Vander Arend, Gessler, Hughes & Socol, Ltd., Michelle Ann Weinberg, Law Offices of Michelle A. Weinberg, Chicago, IL, for plaintiff.

Francis P. Kasbohm, Gary Feiereisel, Fraterrigo, Beranek, Feiereisel & Kasbohm, Steven R. Johnson, Best, Mangan & Langhenry, John Michael Brom, Attorney at Law, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge.

Plaintiff Kimberly Johnson ("Johnson"), on behalf of herself and all others similarly situated, filed an eight count Third Amended Complaint against defendants Rohr–Ville Motors, Inc., doing business as Saturn of Waukegan ("Saturn"), and Mercury Finance Company of Wisconsin ("Mercury"), alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Counts

I, III), the unfair and deceptive practices acts under Illinois and Wisconsin law, 815 ILCS 505/2 and Wis.Stat.Ann. § 100.18 (Counts II, IV, VI), the Racketeering Influence Corruption Organization ("RICO"), 18 U.S.C. § 1961 (Count V), racial discrimination pursuant to 42 U.S.C. § 1981 (Count VII), and breach of fiduciary duty (Count VIII). Plaintiff Johnson has filed a third amended motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the following reasons, plaintiff Johnson's motion for class certification is GRANTED.

## BACKGROUND

On February 21, 1994, plaintiff Johnson purchased a used 1990 Ford Tempo from defendant Saturn. In connection with the purchase, Johnson signed a combined Retail Installment Contract/Truth in Lending Disclosure Statement ("Contract"). Mercury was the assignee of the Contract. The Contract provides that any holder of the Contract is subject to all claims and defenses which the consumer has against the original creditor, in this case Saturn.

In Johnson's Third Amended Complaint, she alleges that defendants[1] violated TILA, unfair and deceptive practices acts under Illinois and Wisconsin law, and RICO. Johnson also alleges that defendant Saturn violated § 1981 and breached its fiduciary duty. Johnson points to the following aspects of the purchase of her automobile:

1. *Extended Warranty.* Saturn charged Johnson $856 for the extended warranty. Saturn, however, paid only $556 to Auto Owners ESC for the warranty. The $856 charge was shown on Johnson's Contract but Saturn's cost of $556 was not disclosed.

2. *$150 Discount on Extended Warranty.* Mercury paid a car dealer less or more for a retail installment contract if the dealer sold an extended warranty with the car. If the dealer sold an extended warranty issued by Mercury, it paid $150 more to the dealer. If the dealer sold a warranty issued by some-

one other than Mercury, Mercury paid the dealer $150 less. Mercury discounted the amount it paid to Saturn for Johnson's Contract by $150 since Saturn sold an extended warranty issued by Auto Owners ESC. The $150 discount between Mercury and Saturn was not disclosed on the Contract.

3. *$600 Discount ("Enhanced Risk" Discount).* Mercury would pay a dealer less for a retail installment contract if the unpaid balance of the car's purchase price exceeded an internal Mercury guideline. For Saturn, the guideline was 120% of the National Automobile Dealer Association ("N.A.D.A.") average trade-in value for used cars, which the car's approximate wholesale value. When Mercury evaluated Johnson's Contract for possible purchase, it adjusted the current N.A.D.A. average trade-in value for 1990 Tempos of $3,900 to $2,950 because of high mileage. Since the unpaid balance of the car's purchase price, $5,367.73 was more than the $2,950 guideline, Mercury discounted the amount it paid to Saturn for the Contract by $600. The $600 discount was not disclosed on the Contract.

4. *$537 Discount ("Standard Discount").* Mercury discounted the amount it paid to Saturn on all retail installment contracts it purchased from Saturn by up to 10%, on a car by car basis. It discounted the price it paid for Johnson's Contract by 10%, or $537, on the unpaid balance of the car's purchase price of $5367.33. The $537 discount was not disclosed on the Contract.

Johnson alleges that by failing to disclose these items in the Contract, defendants violated TILA and the unfair and deceptive practices act under state laws. In addition, Johnson alleges that Mercury and Saturn sold her, with the purchase of the automobile, "Guaranteed Auto Protection" ("GAP") insurance which was totally worthless. Johnson claims that this sale of a worthless product violates RICO and the unfair and deceptive practices acts under Illinois and Wisconsin law. Johnson also alleges that

---

1. The court will refer to the defendants collectively throughout this opinion as "defendants," unless otherwise noted. While each defendant filed their own memorandum in opposition to class certification, defendant Saturn adopted and incorporated Mercury's arguments in its own memorandum.

insofar as the above stated practices are targeted toward or used disproportionately with minorities, they violate 42 U.S.C. § 1981. Finally, Johnson alleges that Saturn breached its fiduciary duty.

## ANALYSIS

 The court should promptly decide whether a case should proceed as a class action without regard to the merits of the plaintiff's legal theory.[2] *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992). The court's inquiry is limited to whether the requirements of Rule 23 are satisfied, not the ultimate merits of the plaintiff's claim. *Id.* The party seeking class certification bears the burden of showing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Further, "a district court has broad discretion to determine whether certification of a class is appropriate." *Id.*

In order for a class to be certified under Rule 23, the party seeking class certification must demonstrate that the four requirements of Rule 23(a) are satisfied. Fed.R.Civ.P. 23(a). The four requirements are numerosity, commonality, typicality, and adequacy of representation. *Id.* All of these elements are prerequisites to certification and failure to meet any one of them precludes certification as a class. *Id.* In addition to the four requirements of Rule 23(a), a party seeking class certification must satisfy one of the three conditions of Rule 23(b). Johnson asserts that class certification is warranted under Rule 23(b)(3), which provides that a class action is proper if questions of law or fact common to all members of the class predominate over questions pertaining to individual members, and if a class action would be better than other alternative methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

Johnson seeks certification of the following classes with various subclasses:

The class (the "Saturn" class) consists of all persons who satisfy the following criteria: (a) They entered into a retail installment contract with Saturn of Waukegan ("Saturn") for the purchase of a motor vehicle; and (b) The transaction was documented as a consumer credit transaction, in that Truth in Lending disclosures were provided; and (c) The transaction or the assignment to any assignee of the contract by Saturn included or involved one or more of the following: (1) The assignee paid Saturn less than the amount financed set forth on the contract; and/or (2) The contract included a charge for an extended warranty; and/or (3) Saturn of Waukegan received a portion of the finance charge from the lending institution; and/or (4) The contract included a charge for "GAP" protection and "the amount financed exceed[ed] $35,000 or 115% [120% on certain dates] of the manufacturer's suggested retail price of the vehicle [or] (115% [120% on certain dates] of N.A.D.A. retail value for pre-owned vehicles) or the loan term exceed[ed] 66 months."

Subclass 1 (the "Mercury" class) consists of all class members where Mercury of Wisconsin ("MFC–Wis.") is or has been at any time the assignee, in whole or in part, with respect to retail installment contract.

Subclass 2 consists of all members of the class or Subclass 1 who are also members of a racial minority group. Subclass 2 includes all such persons whose retail installment contracts are dated on or after February 17, 1991.

For purposes of Counts I and III, the class and subclass 1 include all persons whose contracts are dated on or after February 17, 1994. For purposes of Count II and IV, the class and each subclass include all such persons whose retail installment con-

---

**2.** Defendants spent a considerable amount of time arguing as to the merits of Johnson's claims in their memorandums in opposition to the class certification. This thereby forced Johnson to respond to those arguments in its reply. As this court notes, however, this court must decide whether a case should proceed as a class action without regard to the merits of the plaintiff's

legal theory. *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992). Therefore, this court will not address any of the arguments on the merits of Johnson's claim, even though the arguments are shrouded in terms of class certification. This is not the appropriate juncture in these proceedings for addressing the merits of Johnson's claims.

tracts were outstanding on or after February 17, 1992. For purposes of Count V and VI, the class and subclass 1 include all such persons whose retail installment contracts were outstanding on or after February 17, 1992.

## A. Rule 23(a) of the Federal Rules of Civil Procedure

### 1. Numerosity

■■■ The numerosity requirement is satisfied where the potential class members are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The complaint need not allege an exact number of class members or individually identify class members to satisfy the numerosity requirement. *In re VMS Securities Litigation,* 136 F.R.D. 466, 473 (N.D.Ill.1991). A finding of sufficient numerosity can be based on common sense assumptions. *Id.* A plaintiff, however, cannot rely on conclusory allegations or speculation as to class size. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989). Numerosity problems, however, can be resolved subsequent to class certification. *Id.* at 957. But, generally where class members number at least 40, joinder is considered impracticable and thus the numerosity requirement is satisfied. *Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir.1969).

■■ Defendant Mercury does not contest numerosity in its response to the motion for class certification. Defendant Saturn, however, argues that the numerosity requirement cannot be satisfied because the class members are not objectively definable or readily ascertainable. Johnson claims that the proposed class meets the numerosity requirement. In support of their burden to prove numerosity, Johnson, with supporting documents, estimates that the subclasses consist of almost 400 persons.

Johnson has offered an declaration that shows, just in the transactions for the calendar year of 1994, over 400 files show purchases at Saturn which were financed by Mercury. Of those 400 files provided to Johnson by Saturn, over 300 files show the sale of an extended warranty, over 100 show the sale of GAP, over 400 show the Mercury's "standard discount," over 100 show an "overbook discount," and over 300 show an interest rate split. With respect to the files provided to Johnson by Mercury, 70 our of the 143 show an interest rate split. Based on this evidence, this court finds that Johnson has satisfied the numerosity requirement with respect to the putative classes.

### 2. Commonality & Typicality

■■■ The issues of commonality and typicality are closely related. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). Rule 23(a)(2) requires that the class have common questions of law or fact. Defendants argue that Johnson has failed to satisfy the commonality requirement of Rule 23. "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario,* 963 F.2d at 1018. Some factual variation among the claims of the requested class members does not destroy commonality. *Id.* at 1013.

■■ While it is true in this case that there is some factual variation among the claims of the requested class members, this variation does not destroy commonality. *See Rosario,* 963 F.2d at 1013. The factual and legal questions surrounding whether defendants have violated TILA, the unfair and deceptive practices acts, or Title II arise out a common nucleus of operative facts such that these claims apply to all requested class members. The questions being whether defendants acted in a standardized, contractually driven manner toward the members of the class in selling an automobile. More specifically, the common questions surround whether defendant (1) failed to disclosure hidden discounts to the customer, (2) failed to provided lender's kickback to the customer, (3) sold GAP which was worthless, and (4) these practices were disproportionately imposed upon members of minority groups. If plaintiff proves these violations, the plaintiff and the class members may be entitled to statutory damages under each of the statutes in question. Therefore, this court finds that there are questions of law and fact sufficient-

ly common to all proposed class members to satisfy the requirements of Rule 23(a)(2).

Rule 23(a)(3) requires the claims of the named plaintiff be typical of the claims of the class. The typicality requirement is satisfied if the named plaintiff's claims " 'have the same essential characteristics as the claims of the class at large,' " arise from " 'the same event or practice or course of conduct that gives rise to the claims of other class members,' " and " 'are based on the same legal theory.' " *Retired Chicago Police Ass'n*, 7 F.3d at 596 (*quoting De La Fuente v. Stokely–Van Camp Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). " 'The typicality requirement may be satisfied even if there are factual distinction between the claims of the named plaintiffs and those of the other class members.' " *Id.* In addition, the Seventh Circuit has not required that all class members suffer the same injury as the class representatives to satisfy the typicality requirement. *Id.* at 1018 (citing *De La Fuente*, 713 F.2d at 232). Instead, the court has focused on the conduct of the defendants and the legal theory of the plaintiff. *Id.*

Defendants argue that Johnson's claims are not typical of those of the putative class because she has not demonstrated that her claims have the "same essential characteristics" as the putative class. Johnson responds by arguing that the variations cited by defendants do not defeat commonality or typicality. In this case, each potential class member's claims arise from the same allegedly unlawful practice, course of conduct, and the standardized documents issued by defendants Saturn and Mercury. Although there may be factual distinctions between Johnson's claim and the claims of other members of the requested class, Johnson's claims have "the same essential characteristics" as the claims of the entire class. *De La Fuente*, 713 F.2d at 232. In addition, the fact that Johnson may not have read as thoroughly the documents at the heart of this case does not defeat the typicality requirement as defendants claim. *Id.* The claims of all members of the requested class involve alleged violations of TILA by not including in the finance charge the Mercury imposed discounts, false disclosure for the entire charge for the extended warranty, false disclosure that the dealer received a kickback of a portion of the finance charge, and that the class members were sold worthless GAP insurance. The resolution of these common issues will be dispositive as to defendants' liability to all members of the class, regardless of the potential factual distinctions between the members of the class and plaintiff Johnson. At this point, the class members and plaintiff Johnson's interests in pursuing this class action litigation are very similar, if not identical. Therefore, this court finds that the claims of Johnson are typical of the claims of the putative class to satisfy the requirements of Rule 23(a)(3).

### 3. *Adequacy of Representation*

The adequacy of representation requirement ensures that a class representative fairly and adequately represents and protects the interests of the class. The protection involves two factors: (1) that plaintiff's attorney be qualified, experienced, and generally able to conduct the proposed litigation; and (2) that the representative plaintiff not have interests antagonistic to those of the class. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Defendants do not contend that Johnson's attorneys are not qualified or experienced, instead defendants argues that Johnson is an inadequate class representative because she admitted that did not read any of the documents, never had difficulty with the vehicle, or any dissatisfaction with her dealings with anyone.

The class representative needs to have only a marginal familiarity with the facts comprising the action. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). In this case, the fact that Johnson did not read the documents at the time of the purchase does not now make her qualifications as a class representative inadequate. Johnson has demonstrated that she understands the nature of the frauds allegedly committed. There has been no showing that Johnson has any interests or claims that are antagonistic or conflicting to those of the potential class members. John-

son also seems willing to participate in the litigation. Thus, there is no basis to conclude that Johnson would be an inadequate representative of the class. Therefore, because defendants have not alleged that any conflicts of interest exist between Johnson and the class she seeks to represent nor does this court find that the class representative has interests antagonistic to those of the class, this court finds that Johnson is an adequate class representative.

### B. *Rule 23(b) of the Federal Rules of Civil Procedure*

As previously stated, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), a party seeking class certification must also satisfy one of the requirements under Rule 23(b). Johnson seeks to certify the class under Rule 23(b)(3). Certification under Rule 23(b)(3) must be demonstrated by the plaintiff that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

#### 1. *Predominance*

■ Defendants argue that Johnson's claims fail to meet the predominance requirement. Defendants assert that the variations and variables presented by the various proposed classes and its members who purchased a car from Saturn show that the claims do not predominate. The problem with this argument, however, as pointed out in this court's discussion on commonality and typicality, the primary legal issues surrounding Johnson's claims is whether defendants standardized systematic practices, which were applied in the same manner to all the class members, violated TILA, the unfair and deceptive practices act under Illinois or Wisconsin law, RICO, or Title II. Therefore, this court finds that questions of law common to all the proposed members of the class action predominate over the alleged possible questions affecting any individual class member.

#### 2. *Superiority*

■ Defendants also argue that class certification is not superior to other methods of adjudication. Rule 23(b)(3) lists four factors which a court should consider in determining whether a class action is superior to other methods for handling the controversy. The factors are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extend and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(B)(3). Defendants argue that this class action is not a superior method of adjudication because the potential defenses against Johnson are not common to all the members of the proposed classes. While it is true that a court should look at policy concerns which apply to class actions, this court finds that based on the above four factors, certification of the proposed classes is the superior method. First, because most of the members of the proposed class are likely unaware of their rights under TILA or the other statutes involved in this suit, the class members will probably not file suit to protect their rights. Second, it does not appear that certification of this class will interfere with other litigation. Rather, this court finds that judicial economy is promoted by proceeding with this one action rather than through a large number of actions which present the same issue. Finally, this court does not find anything in the record which indicates that this proposed class would be unmanageable.

The issues presented in this case and to what the class will pertain is whether defendants' actions violated the TILA, the unfair and deceptive practices acts under state law, RICO, or Title II. These issues are suitable for a class action. Accordingly, a class action is the best available method for providing a fair and efficient resolution of this controversy.

Consequently, since this court has found that Johnson has met all the requirements under Federal Rule of Civil Procedure 23, this court grants Johnson's motion for class certification.

### CONCLUSION

For the above stated reasons, plaintiff Johnson's third amended motion for class certification is GRANTED. This court hereby certifies the following class:

The class (the "Saturn" class) consists of all persons who satisfy the following criteria: (a) They entered into a retail installment contract with Saturn of Waukegan ("Saturn") for the purchase of a motor vehicle; and (b) The transaction was documented as a consumer credit transaction, in that Truth in Lending disclosures were provided; and (c) The transaction or the assignment to any assignee of the contract by Saturn included or involved one or more of the following: (1) The assignee paid Saturn less than the amount financed set forth on the contract; and/or (2) The contract included a charge for an extended warranty; and/or (3) Saturn of Waukegan received a portion of the finance charge from the lending institution; and/or (4) The contract included a charge for "GAP" protection and "the amount financed exceed[ed] $35,000 or 115% [120% on certain dates] of the manufacturer's suggested retail price of the vehicle [or] (115% [120% on certain dates] of N.A.D.A. retail value for pre-owned vehicles) or the loan term exceed[ed] 66 months."

Subclass 1 (the "Mercury" class) consists of all class members where Mercury of Wisconsin ("MFC–Wis.") is or has been at any time the assignee, in whole or in part, with respect to retail installment contract.

Subclass 2 consists of all members of the class or Subclass 1 who are also members of a racial minority group. Subclass 2 includes all such persons whose retail installment contracts are dated on or after February 17, 1991.

For purposes of Counts I and III, the class and subclass 1 include all persons whose contracts are dated on or after February 17, 1994. For purposes of Count II and IV, the class and each subclass include all such persons whose retail installment contracts were outstanding on or after February 17, 1992. For purposes of Count V and VI, the class and subclass 1 include all such persons whose retail installment contracts were outstanding on or after February 17, 1992.

Plaintiff Johnson's counsel shall, in consultation with defendants' counsel, prepare appropriate proposed class notices and be prepared to present a proposed schedule at the next status report. The case is set for report on status at 10:30 a.m. on June 18, 1999. The parties are strongly urged to discuss the settlement of this case.